SEYMOUR & BOUCK, canal commissioners, *vs.* VAN SLYCK and others.

According to the general doctrine of *appropriation of payments*, where there are several accounts or transactions between the same parties, the *debtor* has the right to direct to which account the payment shall be applied; if he omits, to give directions, the creditor may apply it to which account he pleases ; and if no application be made by either party, the *law* will appropriate it according to the justice and equity of the case ; and as a general rule, in the absence of all indications of the will or intention of the parties, the law will apply the payment to the extinguishment of the debts according to the *priority of time;* this rule, however, is subject to qualifications and exceptions.

The *intentions* of the parties, either debtor or creditor, in relation to the appropriation, may be *inferred from circumstances*, when it has not been expressly declared ; and accordingly, where a collector of tolls on the canal made a payment in *July*, corresponding *precisely in amount* with an account of tolls which he had returned as collected by him in the preceding month of *May*, there being at the time no other charge in the comptroller's office against him, except a trifling balance for previous months, and in *August* made another payment, also precisely corresponding in amount with the account of tolls rendered as collected in the month of *June*, IT WAS HELD, that a jury from such circumstances were warranted to find that the collector *intended* the payment in *July* to apply to the tolls returned as collected in the month of *May*.

*It seems*, also, that where there is a *general account* against a collector, in which the debits and credits are entered as they occur, and at the time of a payment there is but one charge existing against him at the accounting office known to him, and no direction given by him as to its application, that the passing of the payment by the comptroller to his *general credit* will *prima facie* be considered as *an appropriation by the state* to the payment of the charge then existing.

Where, according to the ordinary course of business, the *monthly returns* of monies collected as tolls were not made until from five to seven weeks after the expiration of the month in which the tolls accrued, *it was held*, that a payment made on the 21st *April* could not have been intended or under-

stood, either by the collector or the comptroller, as a payment of the tolls of *that month,* and that the sureties of the collector in a suit against them were entitled to have such payment applied to the tolls of previous months.

As between debtor and creditor, where the whole indebtedness is from the same individual, and where debts and credits are perpetually occuring, in long running accounts, and no balances are adjusted, otherwise than for the mere purpose of making rests, payments will be applied to extinguish the debts according to the *priority of time;* but where *sureties* are bound for the paying over of monies by their principal, and a *ge neral account* is kept with the principal, in which all debits and credits are entered, and during the progress of the account there be a *change of sureties,* each set of sureties is entitled to the benefit of the monies received during the period of their respective suretyships, so far as the parties have not either expressly or by ne_ cessary implication, arising from the circumstances of the case, applied the payments.

Where a bond for the faithful performance of the duties of a collector of tolls was given to the canal commissioners, bearing date on the *first* day of June, with a certificate of the sufficiency of the sureties endorsed thereon by a public officer under date of the *twenty-fifth* of June, IT WAS HELD, that the admissions of the canal commissioners that they *presumed* that the bond was not delivered to, or accepted by them, until after the endorsement of the certificate of approval, was not sufficient to repel the legal presumption that the bond was delivered and accepted on the day of its date, when the admission was accompanied with the declation that they had no recollection as to the time when the bond was delivered.

The endorser of a note not negotiable has no right, in an action against him, to insist upon a previous demand of the maker and notice of nonpayment; the endorsement is equivalent to a guaranty that the note will be paid, and not a conditional undertaking to pay if the maker does not; an absolute guaranty may be written over the endorsement, upon which a recovery may be had.

Where a note is received by an officer of the government as *collateral security* for the payment of a debt due the state, the debtor cannot avail himself of the neglect or omission of the officer to perform the duties which the law in ordinary cases imposes upon a party thus receiving a note; and even should the officer expressly assume responsibility in relation to such note, as to prosecute it to judgment, *it seems* that the state would not be responsible for any *laches* that might occur.

THIS was an action of *debt,* tried at Albany circuit in February, 1830, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The suit was on a bond, conditioned for the faithful dis_ charge by *Van Slyck* of the duties of the office of *collector of tolls* at Rochester ; i. e. to pay over all monies which might be received by him as collector, and well and truly in all things to execute the office of collector, &c. The others defendants

were the sureties of Van Slyck. The bond bore date on the 1st June, 1825. The plaintiffs claimed to recover the *balance* of all monies received by Van Slyck, as collector, between the 1st June, 1825, and 13th April, 1826, including both dates, and not paid over by him to the comptroller of the state. From the monthly returns made by Van Slyck, it appeared that during the above period, he had received as tolls the sum of $66,590,$\frac{30}{100}$. On the 14th April, 1826, a new bond, with *new sureties*, was executed by Van Slyck, who was collector at Syracuse in the years 1824 and 1825, and until the 4th May, 1826. At the *comptroller's office* one *general account* was kept with Van Slyck, from the commencement to the termination of his office, in which he was charged with the several amounts specified in his monthly returns, and credited with all pay- ments made by him. It appeared that he had fully accounted for all monies received by him during the year 1824, except a small amount charged as *errors*. For the month of March, 1825, he was charged with $15,84; for April, with $9,939, 63; for May, with $12,571,$\frac{54}{100}$; for June, with $11,436,29; and for the residue of that year, with $54,596,$\frac{11}{100}$: making a total of $88,559,$\frac{41}{100}$; and during the same period, he was credited with payments to the amount of $75,858,$\frac{26}{100}$, leaving a balance against him of $12,701,$\frac{25}{100}$. The three first cred- its during the year 1825 were as follows, to wit: May 30th $9936,63, July 22d $12,571,$\frac{54}{100}$, August 23d $11,436,29. When the payment was made on the 22d July, no directions were given by Van Slyck as to its application, and no other appropriation was made by the comptroller than by crediting it to Van Slyck's account generally. No application was made or notice given by the sureties of Van Slyck to the comptroll- er, in relation to the payments made by Van Slyck. In addi- tion to the above balance of $12,701,$\frac{25}{100}$, Van Slyck stood charged on the books of the comptroller with the tolls of April, 1826, amounting to $9,007,85, with those of May, to the 4th day of that month, $2,192,73, with errors in 1824, $357,62, and a like charge in 1826, of $578,69. On the other hand, he was credited with a payment made on the 21st April, 1826, of $891,07, and with another on the 5th June, 1826, of $9,417,

ALBANY, Jan. 1832.

Seymour v. Van Slyck.

89, leaving a balance against him on the whole account of $14,529,$\frac{18}{100}$.

The plaintiffs conceded that the *sureties* of the defendant, Van Slyck, were accountable for only $557,90 of the tolls of April, 1826, that sum being the amount collected up to the 14th of that month, and that they were not liable for the error in the account of 1824, nor for the tolls of May, 1826; making those deductions from the general balance, would leave due only $3,528,88. But then the plaintiffs insisted that the defendants were not entitled to be credited the sum of $12,-571,$\frac{54}{100}$, paid the 22d July, 1825, contending that such sum should be applied in discharge of the tolls of the preceding May, with which it precisely corresponded in amount, and also that the defendants were not entitled to be credited with the monies paid in April and June, 1826, such payments being properly applicable to the tolls received in April and May, 1826, and if those payments were not allowed as credit to the defendants, that then a large balance was due to the plaintiffs, which they claimed to be $17,092,$\frac{27}{100}$.

On the part of the defendants it appeared that the amount of tolls collected in the months of March, April and May, 1825, exceeded $22,000, and in the succeeding months of June and July, exceeded $18,000; that the whole amount of tolls collected from 1st June, 1825, to and including the month of December following, was $66,032,40; that the payments into the treasury during the same period, and including the payment of 22d July, were $65,920,$\frac{53}{100}$, leaving only $111,87 as the difference between the two last sums. It further appeared that no tolls were charged as collected in the year 1826, until the month of April, when the collector was charged for the tolls of that month $9,007,85; but by a statement furnished by the plaintiffs on the trial, it was admitted that up to the 14th April, 1826, when the liability of the sureties in this case ceased, only the sum of $557,90 had been collected, which, added to the above sum of $111,87, makes $669,77. On the 21st April, 1826, Van Slyck paid into the treasury $891,07, which, together with the payment made on the 5th June, 1826, of $9417,89, was credited to his *general account*. In addition to

the defences arising out of these facts, the defendants insisted that the *bond* on which this action was brought was *not delivered* until the 25th June, 1825, and that, consequently, they were not responsible for tolls collected in that month previous to that day, which it was shown amounted $9282,71. The evidence in relation to the delivery of the bond was the following: Seymour, one of the plaintiffs, on being called upon and inquired of as to the time of the delivery of the bond, and being informed that the inquiry was made for the purpose of ascertaining the true time of the delivery, to be shewn on the trial of the cause, stated that he took the bond, but could not recollect at what time it was delivered to him, but should presume that it was not delivered to nor accepted by him until after the endorsement of a certificate of approval made by Judge Samson (which certificate bears date 25th June 1825, and in which the judge certifies that he is satisfied that the obligors of the bond are good and responsible as *bail* for $18,-000 ;) that the canal commissioners at that time made it a practice in taking such bonds, to require the approval of the sureties by a judge, for their own security, before accepting of the bond and that it was his opinion that such was the case in this instance, but that he had no recollection as to the time when the bond was delivered—it might have been either before or after the approval. The defendants also insisted that they were entitled to an allowance of $1000 on account of a *note* which had been received by Bouck, one of the plaintiffs, of Van Slyck as collateral security for tolls. The note was given by Elisha Ely to Harvey Ely and Van Slyck (not negotiable) for $1000, dated the 18th January, 1826, payable three months after date, at the New-York State Bank, and was endorsed *in blank* by Harvey Ely and by Van Slyck; it was delivered by Bouck to the comptroller, with information for what purpose it had been received. It did not occur to the comptroller when the note fell due, to have the money demanded and notice given to the endorsers. Three days after the note became due, he ascertained that no funds had been deposited in the bank where the note was payable, to take it up, and immediately sent notice to the endorsers of the non-payment, and that they would be looked to for payment. A suit was commenced

against the *maker* of the note, a judgment obtained against him, and he was confined on a *ca. sa.* issued on the judgment; no steps however were taken to collect the money of the endorsers, and it was admitted that Harvey Ely was solvent. At the time of the trial of this cause Van Slyck was insolvent.

The judge charged the jury that the evidence given by the defendants was not sufficient to raise the presumption that the bond was not delivered until the endorsement of the approval by Judge Samson, but that on the contrary thereof, it must be presumed to have been delivered on the day of its date ; that as Van Slyck did not designate on what particular account he made the payment in July of $125,71,$\frac{54}{100}$, and as no application had been made or notice given by the sureties, the state had a right to apply it to the credit of an account existing against Van Slyck for tolls *previous to the sureties in this case becoming his bail*, that such application might be made by the state, although the payment had been made from monies *accrued for tolls after* the sureties in this case had become bound, and instructed the jury to make such application, that Van Slyck not having designated the debt to which he wished the payment to be applied, the state had the right to apply it to the payment of any previously existing debt, especially as, at the time of such payment there were no charges on the books of the comptroller, except for tolls received previous to June, 1825 ; and that from the latter fact, and the correspondence in amount between such payment and the tolls of May, 1825, the jury might fairly presume that Van Slyck intended the payment for the tolls of May ; that the defendants were not entitled to the benefit of any payments made by Van Slyck subsequent to the 13th April, 1826, the day of the expiration of their bond and that there had not been such negligence or delay on the part of the plaintiffs, or of the state, in relation to the $1000 note, as would oblige the plaintiffs, or the state, to assume the same, and entitle the defendants to an allowance on account thereof. The jury found a verdict for the plaintiffs, and assessed their damages at $17,031,$\frac{51}{100}$. The defendants moved for a new trial.

*D. D. Barnard* for defendants. The judge erred in instructing the jury that the bond in question was to be *presumed*

to have been delivered on the day of its date ; and in deciding that the defendants were not entitled to an allowance or credit of the $1000 note, for although the note was not negotiable, the endorsements by the payees was equivalent to a guaranty : 13 Johns. R. 175 ; the amount might have been collected of the payees, or if not collectable, it is owing to the omission or neglect of the officer of the state, by which the defendants should not be prejudiced. The defalcation or neglect of Van Slyck to pay over the monies received by him, happened *previous* to the date of the bond. On the 30th May he had paid less than $10,000, although he had then collected up-wards of $22,000. The next payment was in *July*, the amount of which was far less than the tolls collected in June and July. The sureties are entitled to an allowance of all payments made during the existence of the bond, not exceed-ing in amount the tolls actually received during the same time. Nothing is to be inferred from the correspondence or agree-ment in amount between the sum paid in July and the tolls collected in May, as to the intent of Van Slyck that the pay-ment should apply to that particular item of the account ; a better solution of the circumstance is, that that *particular sum* was paid to lull suspicion on the part of the officers of the state. If the judge decided correctly in reference to the pay-ment of July, 1825, he erred in instructing the jury as to the payments of April and June, 1826, for if the first was applica-ble to previously existing items of indebtedness, the last ought to have been applied in the same manner.

The general doctrine of the appropriation or imputation of payments does not apply to this case ; the issue excluded it. The plaintiffs claimed to recover for monies received by the collector while the bond was in force, which it was alleged he had neglected to pay over. The defendants pleaded that he had paid over, and the judge decided that although such mon-ies had been paid, still the defendants were not entitled to be credited therefor, and that the plaintiffs might appropriate them to previous items of indebtedness. Nor for another reason does the doctrine apply ; there were not *two debts*, there was but *one account* against Van Slyck during the whole term of his

ALBANY.
Jan. 1832.

Seymour
v.
Van Slyck.

office.   Nor does it apply because there were persons other than the debtor and creditor interested in the appropriation, the *sureties* of Van Slyck, whose rights could not be affected by any dealings between the principals.   Ordinarily, it is of little consequence to which of two debts a payment is applied; not so where there are *sureties*, and where the principal is insolvent.   7 Cowen, 775, n.   Also where, as in this case, there is an unbroken account against a party having sureties answerable for the faithful discharge of his obligations, each set liable only for a particular portion of time, it is right and just that each should have the benefit of the amount of monies collected and actually paid over during the term for which they were responsible : so it was held in the *United States* v. *January*, 7 Cranch, 572, a case similar to this, and in that case it was also held that the ordinary doctrine of appropriation did not apply.   Again; if the state had the right to make the appropriation, it was lost by the omission to exercise it.   According to the civil law, the creditor is bound to make the appropriation at the time of receiving the money.   1 Merivale, 605.   The common law allows greater latitude, but it never has been decided that the creditor may make his election after controversy has arisen and suit brought.  In *United States* v. *Kirkpatrick*, 9 Wheaton, 720, it was held that it was too late to make election after controversy arisen.   Besides here the payment was appropriated to the *general account*, after which it could not be changed ; 2 Peters' Condensed R. 123, note by Justice Story ; *United States* v. *Kirkpatrick*, 8 Wheaton, 737, and *same* v. *Nicol*, 12 Wheaton ; and it never was changed, the payment being originally placed to the credit of the collector on the *general account*, and so remaining at the time of the trial.   If the judge meant to say that the law in such cases made the appropriation as the plaintiffs desired, he erred ; for without the act of Van Slyck there could be no appropriation of the monies collected during the existence of the bond to an item of previous indebtedness, and unless he directed such appropriation, the law according to its own notions of justice, would apply the payment in discharge of the liabilities of the sureties, to the bond in question.

*Greene C. Bronson,* (attorney general,) for the plaintiffs. If there was doubt as to the time when the bond was delivered, the question should have been submitted to the jury ; instead of doing so, the defendants called on the judge to decide the question as one of law ; he determined it against them, and they must submit. If the bond was not actually delivered on the 1st of June, it must be considered as executed on that day, and remaining in the hands of Van Slyck, as the agent of the plaintiffs, and the delivery, whenever it took place, would relate back to its date ; 9 Mass. R. 310 ; but it is immaterial when it was delivered, as it manisfestly appears that the tolls collected during the whole month of *June* were duly paid over. On the coming in of each monthly return, a debt to the amount of the monies thereby admitted to be received, was acknowledged, and when there are several debts owing by an individual, the payment of a specific sum, corresponding precisely with one of such several debts, is strong evidence of the intention of the debtor to discharge such particular debt. Such was the fact in relation to the payment of *July,* 1825 ; it corresponded precisely with the amount of tolls collected in *May;* and besides, at the time of the payment there was no other charge on the books on the comptroller to which the monies then paid could apply. Acts are equivalent to declarations as to appropriations of payments, and a correspondence in amount between an existing debt and a payment made, is evidence of the intention of the parties that the payment shall apply to such debt, instead of another due to the same creditor. *Robert* v. *Garnie,* Caines, 14. Circumstances in such cases are equivalent to facts, and a special appropriation may be inferred from the circumstances of the case and the nature of the transaction. 4 Cranch, 317. 14 East, 204. 5 Taunton, 201. The sureties of Van Slyck for the year 1824, in a suit against them, would have a right to insist that the payment of *July* corresponding precisely in amount with the tolls collected in *May* preceding, should be applied in discharge of such tolls. Admitting the money paid was actually collected subsequent to the 1st *June,* and misapplied by Van Slyck, his sureties for 1825 are not, on that account, discharged. It was to guard against misapplications that sureties were required.

A payment to the state on another account than that for which the sureties were bound, is the same as if the principal had extinguished a debt owing by him to a third person ; the principle is the same, whether the payment be to the state or to a stranger. As to the time of the appropriation—it is said there is a difference between the civil and the common law, and a preference is asked for the former. It is the fashion of the day to magnify the civil law, to the prejudice of the common law, without regard to the value of the latter. See Evans' Pothier, 528. The common law is founded on no particular code of any nation, but is the collected wisdom of what is valuable in the institutions of all nations, as it regards the rights of persons and property ; all have been made to contribute to the fund which we claim as our richest inheritance. By the common law, if the debtor fails at the time of the payment to direct the application, and there be several debts owing by him, the creditor may make the appropriation ; and if the debtor will not assert his rights at the time of payment, why should courts hunt for pretexts to control the creditor ? The case of *Goddard* v. *Cox,* 2 Strange, 1194, shews that the appropriation may be made at the trial ; and so it was held in *Field* v. *Holland,* 6 Cranch, 8, where it was said, that when both the creditor and the debtor have neglected to make the appropriation, the court will direct it, and that too in satisfaction of the security most precarious ; thus giving the creditor, instead of the debtor, the preference. So also, in 9 Mod. 427, it is said the application may be made at any time before the final settlement of an account. In *United States* v. *Kirkpatrick,* Judge Story lays down a different rule, but his opinion on the point was not called for by the case under consideration, and is at variance with all former cases. In 4 Mason, 303, the same learned judge decided that a payment made during the time of one set of *sureties* may be applied to the discharge of balances due during the time of previous sureties ; this decision is confirmed in *United States* v. *Kirkpatrick ;* whether it can be supported upon conceded principles of law, is submitted to the consideration of the court. If it be sound, and applicable to this case, it will very materially lessen the plaintiff's claim. As to the note received as collateral securi-

ty, the only duty attaching to the plaintiffs was to receive and apply the money ; it was not negotiable, and notice to endorsers were not therefore necessary ; and the endorsement being considered as a guaranty, it was not incumbent on the plaintiffs to sue the guarantors, to save their rights on the principal security.   Where a public officer takes a note as collateral security from a debtor of the government, the debtor is not entitled to credit until the money be paid ; and if *laches* occur on the part of the public agent, the government is not answerable.   *United States* v. *Kirkpatrick*, 9 Wheaton, 720.   *Same* v. *Van Zant*, 11 id. 184.   7 Cranch, 575.   1 Peters, 318. The endorsement of the note by the payees was not a guaranty ; a guaranty may be written over a blank endorsement, where such is the agreement of the parties, but otherwise not. 12 Johns R. 159.   17 id. 326.

*A Van Vechten*, in reply.   Until the bond was approved, it was inoperative, and the appointment incomplete.   From the evidence it is manifest the bond did not go into effect until the 25th June ; the presumption, therefore, upon which the judge relied, instead of being supported, is rebutted by the evidence. The time of delivery was matter *in pais*, and should have been passed upon the jury.   The question of fact was not submitted to the judge ; he was requested to instruct the jury in reference to the time of delivery, and the exception was taken to his charge.   It is an acknowledged principle that the liability of a surety cannot be extended by *construction ;* nor can it be extended by *presumption* or *relation.*   In this case it is contended for the plaintiffs that it shall be *presumed* not only that the bond was delivered on the 1st of June, but that the money paid in *July* was collected previous to that day ; if such was the fact, it should have been proved.   So also, if the plaintiffs relied upon the similarity of the amounts as evidence of intention, that question should have been submitted to the jury.   4 Peters, 1.   If presumption was to be indulged, the legal presumption was, that the collector paid over the monies as soon as received. If the payment of *July* was applicable to previous items of indebtedness, then the payments of *April* and *June*, 1826, should have been credited to the defendants.   They

also were entitled to be credited the amount of the note ; it was recived as collateral security—the endorsement was a *carte blanche,* and a guaranty might have been written over the names of the endorsers, for why else did they endorse ? the note was not negotiable ; the sole object of the endorsement was to give further security, and an agreement to guarantee might well be presumed by the jury.

*By the Court,* SUTHERLAND, J. The first question which arises in this case is as to the time when the bond, upon which the action is founded, was delivered and accepted. The evidence adduced by the defendants, I am inclined to think, was not sufficient to countervail the legal presumption of the delivery of the bond on the day of its date. The practice of the canal commissioners, requiring a certificate from some judge of the court of common pleas of the sufficiency of the sureties in these bonds before they accepted them, was a mere voluntary regulation on their part, not prescribed by law, adopted as a matter of precaution and convenience, but which they might dispense with in any given case without a violation of their official duty. It would be giving an undue influence to such a regulation to permit it to decide the time of the delivery of the bond, whenever its date varies from the date of the certificate. Mr. Seymour in this case has no knowledge or recollection upon the subject ; he says so expressly. If we were to hold, therefore, that the bond did not take effect until the date of Judge Samson's certificate, it would be solely upon the ground that the commissioners must be presumed not to have accepted the bond until such certificate was endorsed upon it, because it was their general practice to require such certificate ; but a practice entirely voluntary, not required by law, and which might be disregarded without any prejudice to the public interest. It will be recollected also that this evidence is drawn from the declarations or admissions of the plaintiffs on the record, and that those declarations may not have been accompanied with the explanations and qualifications which might have been given, if it had been competent to produce them as witnesses in the cause. There may have been a delivery and a conditional acceptance, to become absolute when the certificate was obtained, which, by relation, would . make

it a valid delivery and acceptance from the date of the bond.

The charge of the judge thereof was correct, that the evidence was not sufficient to repel the legal presumption that the bond was delivered and accepted on the day of its date.

The next inquiry is as to the proper application of the sum of $12,571,54, which was paid by Van Slyck, and credited on the books of the comptroller on the 22d day of July, 1825. This has been applied as a credit towards the tolls received by Van Slyck in the month of May, 1825, before the bond in question was given. The sureties contend that it should be applied towards the tolls received after they became sureties, especially as the payment was made, as they allege, out of monies collected for tolls which accrued after they became sureties, and that the state had no right to apply the payment to the extinguishment of a defalcation of Van Slyck existing prior to the execution of the bond in question, and while he had other sureties. It was admitted that Van Slyck held the office of collector during the year preceding the execution of the bond, and had other sureties that year; and that the bond executed by the defendants expired on the 14th of April, 1826, when Van Slyck gave new bail. The defendants were his sureties from the 1st of June, 1825, the date of the bond, to the 14th of April, 1826. The former comptroller testified that the accounts of Van Slyck were kept with him, from the commencement to the termination of his office; that there was no account opened or kept with the sureties of Van Slyck, and that he did not know, when the payment of $12,571,\frac{54}{100}$ was made, that a new bond had been executed and the sureties changed; that the sureties of Van Slyck made no application of, and gave no notice to the witness in relation to the payments made by Van Slyck; and that as soon as drafts or certificates were received from him, they were passed to his credit in the books of the office; that no directions were given by Van Slyck, at the time of the payment of this sum, as to its application; and the witness made no other application, except to credit it to his account generally at the time when it was received; that at that time there were no charges in his office against Van Slyck for tolls, except for the months of March, April and May, the returns for the month of June not

having been received until after the 28th of July; that the charge for the month of March, 1825, was 15,84, that for April, $9,939,63, and that Van Slyck paid on the 30th of May, 1825, $9,936,63, being within $3 of the tolls of April, and leaving due on the 22d day of July the sum of $18,84 on account of the months of March and April, and the sum of $12,571,54 for the month of May; that the collectors were required to make out their returns monthly immediately after the end of the month, but as they were voluminous, they were not generally completed until after the middle of the succeeding month, and were not often received at the comptroller's office until the latter end of such succeeding month; that until the returns came in, there were no means of knowing at the comptroller's office what had been received by the collectors, nor what sum was to be charged to them; that from the 30th of May to the 22d of July, 1825, no payment was made by Van Slyck on account of tolls, and that the amount received by him in the month of May was not known, nor charged to him at the comptroller's office until the coming in of the return for that month, which, having been sworn to at Rochester on 20th of June, was not probably received at the comptroller's office until six or eight days after; that from the manner in which Van Slyck kept his accounts of tolls received, he could know the amount received at the end of each month, whether he sent in his return to the comptroller or not. The return for the month of May shewed that the tolls collected in that month amounted to the sum of $12,571,54, the precise sum paid on the 22d of July following; and the return for the month of June was $11,436,29, which was the precise amount of the next payment made by Van Slyck on the 23d day of August ensuing.

The general doctrine in relation to the appropriation of payments, where there are several accounts or transactions between the parties, is too well settled to require discussion. The debtor has a right to direct to which account the payment shall be applied. If he gives no direction, the creditor may apply it to which he pleases. If no application is made by either party, the law will appropriate it according to the justice and equity of the case; and as a general rule, in the

absence of all indication of the will or intention of the parties, the law will apply the payment to the extinguishment of the debt according to the priority of time. This latter position is subject to certain qualifications and exceptions, which, however, it is now unnecessary to notice. 1 Lord Raym. 286. 2 Strange, 1194, and cases there cited. 14 East, 239, 244, note a. Peake's Ev. 251. Peake's N. P. Cas. 64. 2 Esp. N. P. Cas. 66. *Peters* v. *Anderson*, 5 Taunt. 596. 1 Com. Law. R. 201, 56. 4 Cranch, 320. 9 Wheat. 737. 3 Caines, 14. The intention of the parties, either debtor or creditor, in relation to the appropriation, may be inferred from circumstances, where it has not been expressly declared. It has already been stated that Van Slyck gave no directions in relation to the application of this payment; that at the time when it was made, the charge for the May tolls was the only charge on the books of the comptroller against him, and that he knew the fact, (except a small balance of $18,84, for the months of March and April) that this payment corresponded precisely in amount with the charge for the May tolls, and that it was passed to his general credit on the books of the comptroller. These circumstances would justify a jury in finding that Van Slyck intended this payment for the tolls received in the month of May ; so the jury in this case were instructed by the judge who tried the cause, and I think were correctly instructed. The presumption that Van Slyck intended that the payment should be applied to the tolls for the month of May, and not to those for the month of June, is strengthened by the circumstance that his next payment made in August was the precise amount of the June tolls ; such a coincidence between two successive returns and payments could hardly have been accidental.

But independently of the presumed intention of Van Slyck, I am inclined to think that the state must be considered as having appropriated this payment, at the time it was made, to the May tolls. Those tolls were the only charge, of any importance, at that time existing on the books of the comptroller against Van Slyck, and the passing of this payment to his general credit must certainly, *prima facie*, be an application of it to such previous indebtedness. Judge Story, in the *United States* v. *Kirkpatrick*, 9 Wheat. 737, 8, says, in cases of run-

ning accounts, where debits and credits are perpetually occur-ring, and no balances are otherwise adjudged than for the mere purpose of making rests, the court are of opinion that payments ought to be applied to extinguish the debt accord-ing to the priority of time ; so that the credits are to be deemed payments *pro tanto* of the debts antecedently due. That case resembled this, in being an action against a public officer, (a collector of the revenue,) and his sureties ; and it is believed, that as a general principle, the doctrine laid down by Judge Story is sound. The charge of the circuit judge, therefore, so far as it relates to this point, was substantially correct, and the exception to it was not well taken.

The next inquiry is whether the defendants were entitled to have the payments made by Van Slyck on the 21st of April and the 5th of June, 1826, after the bond had expired, ap-plied to the payment of tolls received by him during the ex-istence of the bond in question. It will be recollected that the bond expired on the 13th day of April, 1826. On the 21st of April, a payment of $891,07 was made, and on the 5th June, another payment of $9417,89. Neither of these payments have been credited to Van Slyck in the verdict of the jury. The case does not disclose the particular time or manner in which they were made; they must be considered, therefore, as having been made in what is shown to have been the ordinary course of the collector, and to have been passed to his general credit, when made, on the books of the comp-troller. It will also be recollected that it appears from the testimony of the comptroller, that although the collectors were required to make their returns monthly, immediately after the end of the month, yet that they were not generally completed and received at the comptroller's office until the latter end of the succeeding month ; and the dates of the affidavits of Van Slyck attached to his monthly returns, deposing to their ac-curacy, show the correctness of this statement. Thus the affidavit subjoined to the return for May, 1825, was sworn to at Rochester, on the 20th June ; that to the return for June, the 28th of July ; for July, the 29th of August ; for August, the 11th of September ; for September, the 2d of November : for October and November, not until the 21st of February,

1826 : the date ot the affidavits to the returns of December, 1825, and April, 1826, is not given.   And it appears from an exhibit which gives the dates at which the various *payments* were received at the comptrollers's office, that they were not generally received until about a month after the date of the affidavit to the last preceding return.   The collector, therefore, was in the habit of retaining the tolls for from five to seven weeks after the end of the month for which they were received, before he paid them over or accounted for them to the comptroller.   It seems, necessarily, to result from these facts that the payment of $891,07, made on the 21st of April, 1826, could not have been intended or understood, either by Van Slyck or the comptroller, as a payment of the tolls of that month ; and the money, if in fact the proceeds of the tolls of April, must have been received before the 14th, when the bond of the defendants expired, as money received after that would hardly have reached the comptroller's office, in the ordinary mode of remitting, before the 21st.   The defendants, therefore, upon every principle, were entitled to the credit of that payment.

In relation to the $9417,89, paid on the 5th of June, the case is not so clear.   According to Van Slyck's return, the tolls received in the month of April were $9007, 85.   A part of this payment, therefore, may have been the proceeds of tolls received after the 13th of April ; how much was in fact received after that date, the evidence does not disclose.   The whole could not have been, because it exceed $410, the receipts of the whole of that month ; and the uniform and established course of business between the collector and the comptroller, repels the supposition that any part of that payment was designed or understood by the parties to be applicable to the tolls of the month of *May*, or to have been the proceeds of that month.   We have not here as in the case of the payments of the 22d of July and the 23d of August, 1825, the important and controlling circumstance of a precise coincidence between the payment and the return of any preceding month, to aid in ascertaining the intention of the parties as to its application.   We have nothing but the fact, that when the payment was made, there was a large balance against Van Slyck on the books of the comptroller, independently, of, and anteri-

ALBANY,
Jan. 1832.

Seymour
v.
Van Slyck.

or to the return of the month of April, (whether the return for that month had then been received does not appear,) and that the payment was made and credited as on general account. Upon these facts, it appears to me that the payment of the 5th of June, 1826, cannot be considered as having been specifically appropriated, either by Van Slyck or the comptroller, and that the law must make the application according to its own notions of justice.    I fully accede to the general proposition laid down by the supreme court of the United States in *The U. S.* v. *Kirkpatrick,* 9 Wheat. 737, that in cases of long running accounts, where debits and credits are perpetually occurring, and no balances are otherwise adjusted than for the mere purpose of making rests, payments ought to be applied to extinguish the debts, according to the priority of time. There can be no objection to this principle in the ordinary cases of debtor and creditor, where the whole indebtedness is from the same individual.    But in a case like this, where, although the account is continued and unbroken, there has during its progress been a change of sureties, I am inclined to 'think the principle ought not to be applied.   So far as the parties have not, either expressly or by necessary implication arising from the circumstances of the case, applied the payments, it is obviously just and equitable, as it regards the sureties, that each should have the benefit of the amount actually received by his principal during the period of his suretyship, so far as it can be ascertained.    Such was the doctrine of the supreme court of the United States in *The U. S.* v. *January & Patterson,* 7 Cranch, 572.   In that case a collector of the revenue had given two bonds at different times, with different sureties, and the supervisor of the revenue, to whom the collector's payments were made, had promised the collector to apply them exclusively to the bond first given, although some of them were for money collected and paid after the second bond was given.   It was held that the promise of the supervisor did not bind the United States, and did not amount to an application of the payments to the first bond; and after stating the general rule as to the application of payments, the courts say that the rule adopted in ordinary cases is not applicable to a case circumstanced like this—where the receiver is a public offi-

cer, not interested in the event of the suit, and who receives on account of the United States—where the payments are indiscriminately made—and where different sureties, under distinct obligations, are interested; and it will be admitted, they observe, that monies arising due, and collected subsequently to the execution of the second bond, cannot be applied to the discharge of the first bond, without manifest injury to the surety in the second bond. Justice between the different sureties can only be done by reference to the collector's books. Applying this principle to the case at bar, it would entitle the defendants to be credited for so much of the amount paid by Van Slyck on the 5th of June, as can be shown to have been received by him for tolls prior to the 14th of April, 1826, when new sureties were given.

The omission of the comptroller to give notice to the endorsers of the non-payment of the $1000 note, left with him as collateral security by Van Slyck, did not, I apprehend, in judgment of law, render the plaintiffs or the state chargeable with it. The note was not negotiable; it was made by Elisha Ely, payable to Harvey Ely and P. A. Van Slyck, three months after date—not to their order or bearer—and by them endorsed in blank. It is not essential to the validity of a bill of exchange, or promissory note, as an instrument under the statute or according to the custom of merchants, that it should be negotiable, 6 T. R. 123; *Rex* v. *Box*, 6 Taunt. 325; 1 Com. L. R. 401, S. C.; Chitty on Bills, 86; *Downing* v. *Backenstors*, 3 Caines, 137; 9 Johns. R. 217; although at one period it was seriously questioned. The endorsement and transfer of such an instrument is good, so as to make the endorsers liable to the endorsee, although it will not give the endorsee a right of action in his own name against the maker. *Hill* v. *Lewis*, 1 Salk. 132. Chitty on Bills, chap. 4, page 142. 1 Dall. 194. 2 Dall. 249. The endorsement in such a case is equivalent to the making of a new note; it is a guaranty that the note will be paid—it is a direct and positive undertaking, on the part of the endorser, to pay the note to the endorsee, and not a conditional one to pay if the maker does not, upon demand, after due notice. Chitty on Bills, 142. Strange, 478. 3 East, 482. 6 Cranch, 222. 4 Mass. R. 258. The en-

ALBANY,
Jan. 1832.

Seymour
v.
Van Slyck.

dorser in such a case, I apprehend, is not entitled to the usual privilege of an endorser of negotiable paper; he stands in the relation of principal and not surety to his endorsee, and has no right to insist upon a previous demand of the maker, and notice of non-payment. An absolute guaranty may be written over his endorsement, upon which a recovery may be had against him. 12 Johns. R. 159. 17 Johns. R. 326. The endorsers in this case, therefore, were not discharged by the omission of the comptroller to give them immediate notice of the non-payment of the note; and the only question is whether it was his duty to prosecute the note to judgment, and whether the defendants can avail themselves of the omission to do so. It will be recollected that Van Slyck, the principal in the bond on which this suit is brought, was one of the endorsers upon this note. I consider the note as having been received as collateral security only, to be applied when paid to the credit of Van Slyck. The officers of the government did not intend to assume any responsibility in relation to it. It may admit of very serious question, whether if they did, the state would be responsible for their laches; whether they would not be considered, *quoad hoc*, the agents of the party who had been the means of imposing this office upon them, for his own accommodation, instead of paying promptly as it was his duty to do, the balance due from him to the government. It is well settled in the courts of the United States, that the debtors of the government will not be discharged, by the neglect or omission of its officers to perform the duties which even the law imposes upon them. The government and its officers are considered the same, and the general principle is adopted that laches is not imputable to the government, and this principle is founded not on the notion of extraordinary prerogative, but upon considerations of public policy. 9 Wheat. 735. 11 Wheat. 184. 1 Peters, 318.

This disposes, I believe, of all the important questions raised upon the argument; and although the discussion of each might have been much more extended, it is believed that enough has been said to settle all the material questions which will probably arise upon a second trial.

New trial granted.