## LONG v. SMYSER & HAWTHORNE.

The assignee of a promissory note not negotiable, may sue the assignor, without first demanding payment of the maker, and without notice of the non-payment to the assignor.

The holder of a promissory note not negotiable, indorsed in blank, may fill up the indorsement, by writing over the name of the indorser, a waiver of demand and notice.

### *Appeal from the Mahaska District Court.*

THE defendant, Hawthorne, made his promissory note to his co-defendant, Smyser, for $300, which Smyser, before the same fell due, assigned to the plaintiff. The note was payable in current funds, and was not negotiable. Payment not being made by Hawthorne, when the note fell due, Long brought suit against the maker and indorser. Judgment by default, was rendered against Hawthorne. Smyser demurred to the petition, for various reasons set forth in the demurrer, and among others, that the petition does not show that payment had ever been demanded by plaintiff of the maker of the note, and that Smyser had never been notified of the non-payment. The court sustained the demurrer, to which plaintiff excepts, and assigns the sustaining of the demurrer as error.

*W. H. & J. A. Seevers*, for the appellant.

The only case in point to be found in Johnson and Wendell, is *Seymour* v. *Van Slyck*, 8 Wend. 403, which is just like this. The note being not negotiable, and being indorsed by the payee, the latter was held liable without proof of demand on the maker, or notice of non-payment to the indorser; for the reason given in 8 Pick. 423, that there is no such thing as an indorser of a note not negotiable; at least, he is not entitled to the rights of indorsers of negotiable paper, as to demand and notice. The rule in Connecticut is, that where the payee of a note not negotiable, signs his name in blank

on the back of the note, he is responsible, without proof of demand and notice. His liability is a conditional one to a certain extent only, that the holder should use due diligence by the commencement of a suit, to make the money of the maker. 5 Conn. 175 ; 11 Ib. 213, 440 ; 16 Ib. 223, and 4 ; Ib. 389. The payee of a note not negotiable, indorsed in blank, was held liable as original promissor or surety, (3 Mass. 274), which is the only case to be found like this; all others cited, being negotiable notes and the indorser not being a payee thereof. Such is also the result of our examination of the New York authorities.

The case cited by Story, in support of the *dictum*, that an indorser of a note not negotiable, is entitled to notice of non-payment by the maker (Story P. Notes, § 128), is *Jocelyn* v. *Ames*, 3 Mass. 274. This case does not sustain him, but is to the contrary effect. *Jones* v. *Falls*, 4 Mass. 245, is, perhaps, not in point. A minority of the court held that the note was negotiable, and the whole court held, that there was sufficient proof of notice ; and the remark by PARSONS, " that indorsers were not liable, without proof of demand and notice," was not called for by the case, being a mere *obiter dictum*. In *Sanger* v. *Stimpson*, 8 Mass. 259, no question was made as to the negotiability of the note ; besides which, a notice was proved, which was held sufficient. No question was made by counsel, or decided by the court, as to whether the indorser was entitled to notice. *Upham* v. *Price*, 12 Mass. 14, was a negotiable note, besides which the indorsement was special, and held by the court to be a guaranty, and indorser not entitled to notice. *Jones* v. *Witter*, 13 Mass. 304, is entirely different. The note was negotiable. The suit was against the maker, and not against the indorser. The only point made or decided was, whether the maker was entitled to credit for money paid the payee, after notice of the transfer ? The other cases cited by Mr. Story, are not within our reach. Where there are conflicting decisions by courts of equal respectability, this court will adopt such rule as is best suited to our people. And what has been the common understanding of the courts, bar, and people, as to the

true construction of the contract of indorsement of notes not negotiable? In arriving at this understanding, no better guide can be followed than our statutes upon the question. As early as January, 1839, an act was passed upon this subject, by which a complete and radical change in the law merchant was made; and in reference to the question under consideration, the indorser of all notes, whether negotiable or not, was held liable, if due diligence by suit against the maker, had been used, and was unavailing. The indorser was not entitled to demand and notice. Laws of 1839, 382, § 2. And such substantially, has been the law in this territory and state, up to the passage of the Code. Laws of 1843. Nor has the Code made any material change in the law upon this subject. Sections 954, 955, 956. For a period of years, then, the law has been codified and well understood; parties have acted upon it; and it was reserved to the legislature of 1853, to make what was well known and understood by all, uncertain, and throw us back upon the doubts and conflicting decisions of the law merchant. Laws of 1853, 128, § 3. At least, this was attempted, and it is for this court to say, to what extent it has been done—whether the act of 1853, only applies to instruments recognized as negotiable by the law merchant only, or such as are made negotiable by the Code?

1. We claim, that the provisions of the Code are not repealed as to instruments not negotiable. The class of instruments mentioned in section 949 of the Code, are affected equally with all others. A class unknown to the law merchant. The Code makes them assignable. The law of 1853, does not change that provision, but if it applies to them at all, compels the assignee to give notice of non-payment, before he can recover of the assignor. How can it be said "that notice of the non-payment of such instruments, shall be given according to the rules of the commercial law," when such instruments were unknown to the commercial law? What is to be done with the class named in sections 950, 951? The law of 1853, cannot apply to them; if not, why does it to the class under consideration? When you once say it ap-

plies to notes not negotiable, there is no reason for stopping short of all notes and instruments made negotiable by the Code.

2. We insist that the reference in the law of 1853, to the " commercial law," must be taken to mean the " commercial law " of Iowa. The term " commercial law," is peculiar to statute, and is to a great extent unknown out of it. At least, it has no clear *legal* meaning or signification. If the inten- tion was to refer to the " law merchant," why did they not say so. And the meaning would have been clear and well understood. Every state in the Union has a " commercial law," peculiar to its own jurisdiction, and different in many particulars from each other. The " commercial law " is un- derstood differently. The " law merchant," when used, has a technical and legal meaning; " commercial law," has not. If the " commercial law " of Iowa, is what is referred to, then all is clear, and can be well understood. It consists not of contradictory decisions of courts, either of our own or other states, but of statutes, that are plain and easily under- stood by all. If this construction is adopted, the Code and the law of 1853, can both stand, which construction should be given if possible, at least, as to those portions of the Code which are only inferentially repealed by the act of 1853.

3. We understand that the Code provides (so far as paper negotiable by the law merchant, or made so by the statute of Anne, which has been held merely declaratory of what that law was), that grace is allowed on bills of exchange, but that a demand on any of those days will be sufficient to charge the indorser; and that the latter is liable, if due dili- gence has been used by commencement of suit against the maker, upon negotiable instruments. Sections 955, 957. By the law of 1853, grace is allowed upon both bills and notes. According to the rules of the " commercial law," if the latter is held to be identical with " law merchant," then we claim that all the law of 1853, affects in the least, are in- struments negotiable according to the principles of the law merchant; or in other words, the class of instruments con- templated in sections 947, 955, 957 ; and that the instruments

mentioned in all other sections of the Code, are unaffected by its provisions, and that all other sections of the Code stand. If the law of 1853, by the words "commercial law," refers to the "law merchant," it is not the peculiar "law merchant, of Massachusetts, where a note not payable to "order or bearer," is held to be negotiable. The reverse is held in New York, while in Connecticut, a different rule still prevails. But it refers to the law merchant of England, from whence all our law upon this subject was derived. By it, the note under consideration is not negotiable.

It will be seen that the amended petition, claims the right to write over a blank indorsement of a promissory note, *anything* that will make the indorser liable, without proof of demand and notice. Upon this question, 3 Mass. 274, and 8 Pick. 423, are relied on. In those cases, such a doctrine was announced.

*Loughridge & Macon*, for the appellee.

STOCKTON, J.—Various questions are raised by the demurrer to the amended petition in this cause. The most important question, however, to be decided, is as to the right of the assignee of a promissory note not negotiable, to sue the assignor, without first demanding payment of the maker, and without notice of the non-payment to the assignor. The same question has been before this court, at the present term, in the case of *Wilson* v. *Ralph & Van Shaick*, from Linn county. We have felt inclined to follow the authority laid down in the case of *Seymour* v. *Van Slyck*, 8 Wendell, 421, in which the Supreme Court of the state of New York held, that the indorsement of a non-negotiable note, is equivalent to the making of a new note, and is a direct and positive undertaking on the part of the indorsers, to pay the note to the indorsee, and not a conditional one to pay, if the maker does not upon demand, after due notice.

Another question raised by the plaintiff in his assignment of errors, is, as to the right of the holder of a promissory note not negotiable, indorsed in blank, to write over the blank

indorsement, a waiver of demand and notice, or anything else which may render the indorsers liable, without proof of demand and notice.   As such a filling up of the blank indorsement, would only be expressing in writing, what is in reality the meaning and effect of the undertaking of the indorsers, and as defendant would not be in any manner prejudiced by such an act, we are inclined to decide in conformity with the adjudications in Massachusetts and New York, that the holders of a non-negotiable note, indorsed in blank, is entitled to fill up the indorsement, by writing over it a promise to pay the contents of the note to the indorsee, or a waiver of a demand and notice.   See *Jocelyn* v. *Ames*, 3 Mass. 274; *Oxford Bank* v. *Haynes*, 8 Pickering, 423 ; *Herrick* v. *Carman*, 12 Johnson, 161 ; *Seymour* v. *Van Slyck*, 8 Wend. 421. We are, therefore, of opinion, that the plaintiff was entitled to recover on his amended petition, and that the demurrer to the same was improperly sustained.

Judgment reversed.