### Huse v. McDaniel.

1. **Payment: BY OBLIGATION OF THIRD PARTY.** The transfer by a debtor to his creditor of a note or bill of a third party, on account of a pre-existing debt, operates as a conditional payment only, in the absence of an agreement that it shall be taken in absolute payment.

2. —— The *length* of time the debt had existed, as that it had existed but a few days, is not material in considering the question as to whether it should be considered a pre-existing indebtedness.

3. **Vendor and vendee: CONTRACT: AGENCY.** Where one authorized as agent of another to purchase land and fix the terms of payment, receives from the vendor a title bond or contract, his principal is bound by the conditions thereof, as to payments, and suit may be maintained against him thereon, notwithstanding the fact that the agent, without authority, executed, in the name of the principal, notes for the amount of such payments.

4. **Payment: OBLIGATION OF THIRD PARTY.** The rule above referred to, in respect to the transfer of a note or obligation of a third party on account of a pre-existing debt, is not changed or affected by the fact that the same was not indorsed by the debtor, but received on the previous indorsement of a third party.

5. —— Nor by the fact that the instrument transferred was non-negotiable.

6. —— **APPLICATION OF RULES.** A, being previously indebted to B, transferred to him on account thereof two non-negotiable bank certificates of deposit, issued to a third person, and by the latter indorsed, but not indorsed by the debtor A. There was no agreement that the certificates should be received by B, in absolute payment. *Held,* that the transfer and receipt of the certificates did not operate as absolute payment.

7. —— EVIDENCE. Nor would the fact that the creditor, at the time of receiving the certificates, made inquiry as to the solvency of the bankers who issued them, and received the paper upon the belief that they were responsible, and that he knew nothing of the financial ability of his debtor, be sufficient to establish an agreement that the certificates were received in absolute payment.

8. —— LACHES : INSTITUTION OF SUIT : DEMAND AND NOTICE. Nor would the creditor receiving such non-negotiable certificates be bound, in case of non-payment, to institute suit against the bankers issuing them, or to take any steps in making presentment of the paper for payment, or in giving notice of default thereof, beyond what a prudent business man would under like circumstances.

*Appeal from Cass Circuit Court.*

SATURDAY, FEBRUARY 24.

ACTION at law to recover a part of the purchase-money for certain land sold by plaintiff to defendant. The petition sets up the contract of purchase and sale, and that a part of the consideration remains unpaid and is due plaintiff. The answer admits the purchase of the land by defendant, but denies indebtedness therefor, and avers that defendant has paid the full amount of the consideration. The cause was submitted to the court without a jury, and, upon certain findings of facts made by the court, judgment was rendered for plaintiff. Defendant appeals.

*Barcroft, Gatch & Hammond* for the appellant.

*C. F. Loofbourow*, with *Withrow & Wright*, for the appellee.

BECK, Ch. J. — The findings of the court disclose the following facts : On the 4th day of March, 1869, the defendant purchased of plaintiff certain lands for the consideration of $8,400. On the same day defendant's agent paid to plaintiff $400 and agreed to pay the balance of the purchase price of the land in ten days at ten per cent per annum interest.

1. PAYMENT : by obligation of third party.

Plaintiff, at the same time, executed to defendant a bond for a deed. On the 15th of the same month, the agent of defendant transferred and indorsed to plaintiff, upon his said contract of purchase, certain certificates of deposit and a check. Among them were two certificates of deposit upon a certain banking-house in Buffalo, New York, for $2,000. , On the 24th, the same agent of defendant gave the plaintiff a draft on New York for the amount remaining unpaid upon the purchase of the land. Plaintiff executed and delivered a deed for the land to defendant and took up his bond. The plaintiff has not received payment upon the two certificates on the Buffalo bank. At the time of the transfer of these instruments, there was no agreement between plaintiff and the agent of defendant, that they should be received in payment *pro tanto* upon defendant's indebtedness to plaintiff for the land. The certificates were presented to the makers thereof on the 25th and 26th of March, 1869, and, upon payment being refused, were protested. On the 28th ' of same month plaintiff notified defendant of the non-payment of the certificates, and that he would look to him for the balance due on the land. Upon these findings the court rendered judgment for plaintiff.

I. The defendant claims that the findings of the court are not supported by the proof, and, upon an assignment of errors to this effect, asks us to review the evidence. The main point of contest upon the findings of the court relates to the conclusion that the certificates were not received in payment of defendant's indebtedness, growing out of the purchase of the land.

It is a doctrine recognized by this court, that the transfer of a note or bill of a third party, on account of an existing debt, in the absence of an agreement that it shall be taken in absolute payment, operates only as a conditional payment, and does not defeat recovery upon the original indebtedness in case of the non-payment of the

paper of the third party. *Kephart* v. *Butcher*, 17 Iowa, 240; *Gower* v. *Halloway*, 13 id. 154; *McLaren* v. *Hall*, 26 id. 297; *Farwell* v. *Salpaugh*, 32 id. 582. This rule is not denied by defendants' counsel, but they seek to avoid its application here by attempting to show, from the evidence, that the indebtedness upon which the certificates of deposit were received was not pre-existing, but was, in fact, contemporaneous with the transaction; in other words, that these instruments were transferred in payment for the land, the purchase thereof and transfer of the paper being simultaneous acts, and parts of one transaction. The fact that the bargain for the land was made on the 4th of March, and the payment was to be made on the 15th, is regarded by counsel as evidence that the transaction is to be regarded as a sale upon a payment to be made in hand; that the payment was but the consummation of the transaction, the completion of the negotiation resulting in the sale. It is claimed, too, that the $400 paid upon the day of the bargain was not in fact payment for the land, but was considered by the parties in the nature of a deposit, to be forfeited in case the contract was not performed by defendant. It is also urged that defendant received neither the possession nor title to the land, and was not entitled to either except upon payment or tender of payment for the land. These are the first reasons assigned by counsel for holding that there existed no prior debt upon which the certificates were received. In reply it may be said that the fact is undisputed that defendant had executed to plaintiff his promissory note; that it was a valid instrument, and executed upon a sufficient consideration, and could have been enforced against defendant either in the hands of plaintiff or a transferee; that upon this note defendant was indebted to plaintiff. As a matter of fact, there was an indebtedness, created on the 4th day of March, from defendant to plaintiff. The circumstances, that the conveyances for the land had not been executed,

or the possession delivered, and that a sum of money paid at the time of the contract was intended as a forfeit, do not establish the fact that no prior debt existed on the 13th of March, when the certificates were transferred. These circumstances are all consistent with the existence of a debt contracted on the 4th of March. The transaction is simple and of very common occurrence. It amounts to this: Defendant purchased the land of plaintiff; he executed his note for the purchase-money; to secure its payment the title and possession of the land was retained by plaintiff, whose bond was intended as an embodiment of the contract, and an obligation upon plaintiff to convey the land upon receiving the amount of defendant's note. At the completion of these arrangements defendant held the equitable title of the land, and owed plaintiff $8,000, as evidenced by the note. The fact that this indebtedness of defendant to plaintiff was of recent creation, having been contracted but ten days prior, is no ground for concluding that the transaction does not amount to evidence of the existence of a prior debt. When the creation of the debt is complete, from that moment the indebtedness exists, and if, by its terms, it is to run but ten days, it must be regarded in the same light as though it had existed a greater time. No reason can be given why a debt contracted but a short time shall, in the application of the rule of law just announced, be regarded differently from one of a longer standing.

II. Counsel argue that the note was not binding upon defendant, because it was executed in his name by an 3. VENDOR AND agent, who had no express or implied power VENDEE: con- tract: agency. to make the instrument. It is not denied that the agent was empowered to purchase the land for defendant and to fix the time of payment. It is not questioned that he was authorized to enter into a contract to the effect of the one embodied in plaintiff's bond; by the acceptance of that bond he was bound by its terms, which specify the

sale of the lands and defendant's contract to pay $8,000 for the same, ten days after the date of the instrument. If, then, the note was not binding upon defendant, a question which we need not consider, he was clearly indebted upon the contract set out in the bond, and under it was bound to plaintiff.

III. Counsel announcing the rule, which it is not necessary to examine here, that a transfer of the note of a third party for a debt contracted at the time of the transaction, does, in the absence of evidence of a contrary intent, operate as a satisfaction, claim that the indebtedness in this case was contemporaneous with the transfer of the certificate, and is, therefore, satisfied. We have just pointed out our reasons for sustaining the finding of the court to the effect that the debt of defendant to plaintiff existed before the transfer of the certificate. This position of counsel demands no further attention.

IV. The certificates of deposit in question were not indorsed by defendant, but were received by plaintiff upon 4. PAYMENT: the indorsement of a third person. Defend-
obligation of
third party. ant's counsel maintain that, for this reason, it will be presumed that they were received in absolute payment of defendant's debt. The evidence discloses the facts to be, that defendant at the time of the purchase, as well as of the transaction resulting in the surrender of the note, which he contends is to be regarded as payment, was not present. The business was done for him by others. He requested the then holder of the certificate to pay for him the $8,000, at the time it became due. There was no understanding between defendant and this person in regard to the funds in which payment should be made. Having no other funds, the holder of the certificate used them in the transaction. They were either indorsed by him or the original payee to plaintiff, at all events they were received by plaintiff without defendant's indorsement.

Upon the question here presented, whether the absence of defendant's indorsement is evidence that they were received in absolute payment, there is very great conflict and confusion in the authorities. It is impossible to reconcile them, and difficult to form an opinion as to which view of the question is supported by the weight of the decisions. The cases cited in the notes in 2 Parsons on Notes and Bills, pp. 158, 161, 217, fairly exhibit the uncertainty in which the authorities leave the question.

Upon principle, we are unable to hold that the transfer of a bill or note, without the indorsement of the debtor, will operate to discharge the debt. The distinction between such a case, and one where the instrument is indorsed by the debtor, which is held not to operate as payment, are not such as in our opinion justify attributing different effects to the two acts of the debtor. The only difference in fact in the cases is, that in the last the debtor becomes bound as an indorser upon the instrument transferred. Upon this contract, he is liable to the creditor. In the first case there is no such liability. The reasons, so far as we have observed, that are given for holding the original debt to stand unpaid, in cases involving the point now under consideration, is that the indorsement operates to keep alive the debtor's obligation to the creditor. His obligation upon the original debt, it is said, is suspended by the new contract of indorsement, but, upon the dishonor of the last instrument, his obligation to pay the first debt revives. If the doctrine depended upon the existence of a binding obligation between the debtor and creditor to pay the *amount* of the original debt, this reasoning would support the view contended for. But, as the statement of this argument itself shows, it finds no support in this thought. It is conceded, by the terms above used in stating the positions assumed, that the original debt, by the dishonor of the second instrument, is *revived*. It was then evidently never discharged. If the debt was paid the con-

tract upon which it existed was performed. The subsequent default of other parties upon another contract could not have had the effect to revive a discharged contract — restore an indebtedness that had been paid. But, in our opinion, the doctrine which declares that one indorsing the bill of another, given upon a prior indebtedness, is liable thereon, if the bill be not paid, is founded upon a different reason. It is this: the law requires the debtor to discharge the obligation imposed upon him, by the payment of the debt. Until this be done he is bound upon his contract. The transfer by indorsement of a note of a third person does not discharge this legal obligation resting upon the debtor to pay the debt, unless the note indorsed be paid. If it be not paid his obligation has not been performed. The debt remains unpaid. The act of transferring the note is simply a means adopted to secure the payment of the debt; if it fail the debt still subsists. The creditor, by accepting the note, may well be presumed to consent to a suspension of the remedy upon the original debt until the dishonor of the instrument he receives. This seems to be the foundation of the doctrine as announced in *Clark* v. *Mundell*, 1 Salkeld, 124, and *Ward* v. *Evans*, 2 Lord Raymond, 528. In the last case Lord HOLT says: " When such a note (the note of a third person) is given in payment, it is always intended to be taken on this condition, to be payment, if the money thereon be paid in a convenient time."

If the doctrine be founded upon these reasons it is equally applicable to the case of a note given in payment without the indorsement of the debtor. The obligation rests upon the debtor to pay the debt. If this obligation is not discharged by another contract, whereby he becomes bound as an indorser, surely it will not be, in the absence of such a contract. In the first case, as we have seen, the indorsement does not keep alive the indebtedness; why should it be extinguished because there is no

indorsement? If the doctrine is not based upon the fact of the indorsement, then the indorsement is not necessary to support it, and it is therefore applicable to cases where the debtor transfers paper by delivery without indorsement, unless forbidden by other principles. It really appears that there are stronger reasons for applying the doctrine to cases where the creditor fails to indorse the paper, received upon the debt, than when it is transferred by indorsement. If such paper, according to Lord HOLT, is not payment until it be really paid, and the thought is founded in principles of justice and equity, the debtor ought not to be discharged upon the original contract on account of paper received thereon upon which the debtor is not bound. In such a case if the transaction amounts to payment the creditor loses all recourse upon the debtor. The very fact that the debtor is not bound upon the paper given by him on account of the debt is a reason why his obligation upon the original contract should be preserved. In that view he will be unable to escape the payment of his debt ; to secure this end the law should come to the aid of justice and equity.

It will, of course, be understood that the agreement of the parties, to the effect that paper of any description taken upon a prior debt shall be regarded as payment, will be enforced by the law. It will also be readily seen that these views do not apply to bank notes. They pass from hand to hand as money, and, for that reason, payment therewith discharges the original debt.

V. The certificates of deposit in question were payable in currency. They are not, therefore, to be considered negotiable paper. *Huse* v. *Hamblin*, 29 Iowa, 501. This fact has been made the foundation of an argument by defendant's counsel in support of their position that the transaction amounted to absolute payment of plaintiff's debt. In our opinion the questions above discussed are unaffected by the non-negotiable character of the paper.

This opinion is not expressed without doubts. We reach our conclusion upon this course of reasoning. Non-negotiable paper differs not from negotiable in the fact that each is the evidence of the debt for which it is issued. The paper is but evidence of the debt — nothing more. The transfer of the debt in each case is effected by what is usually called the transfer of the paper. Now in the case of the transfer of non-negotiable paper, the debt is the thing which the transferee is to receive. If it be not paid he receives nothing — in fact it cannot be said that he receives that which was transferred to him until it be paid. The same is true of negotiable paper. In the case of negotiable paper the foundation of the doctrine that its transfer to a creditor will not, in the absence of an agreement, operate to discharge the debt, is founded, as we have shown above, on the thought that the debtor ought not to be discharged until the debt be actually paid. This is not done until the paper transferred is paid. Now the very same reason which supports the rule in the case of negotiable paper will make it applicable to transactions where non-negotiable instruments are given upon prior debts.

VI. Other circumstances are relied upon by defendant's counsel as evidence establishing that the certificates were received by plaintiff in full satisfaction of his claim upon defendant. One of these is the fact that plantiff made inquiry as to the solvency of the bankers who issued the certificates, and received the paper upon a belief that they were responsible, and that he knew nothing as to the financial ability of the defendant. It may be conceded that plaintiff, in the exercise of prudence, which is common on such occasions, required assurances that the paper would be paid, and in disregard of the like requirements of care and caution, neglected to satisfy himself as to the responsibility of the defendant. These facts are not sufficient to establish an agreement that the certificates were received by defendant as absolute

*7. — evidence.*

payment. There may be circumstances upon which an argument may be fairly based in support of defendant's theory, but it fails to convince us of the conclusion of fact which is sought to be established. Another fact is made the foundation of an argument to support the same conclusion. It is that the certificates belonged to the defendant's agent, and that defendant was not a party to them. But these facts, under the views we have endeavored to express above, do not in law release defendant, and, in our opinion, do not establish a contract between the parties to that effect. As to all of the circumstances of the transaction, he may have acted without caution ; but the facts we have just noticed may be made the foundation of an argument to the effect that he relied upon the liability of defendant and his remedies against him in case of the non-payment of the certificates. It will be remembered that the deed for the land was not made when the certificates were received. Plaintiff may have relied for security upon this fact.

VII. Counsel for defendant insist that, admitting the certificates to have been received by plaintiff as conditional 8. LACHES: institution of suit: demand and notice. payment only, he was bound to use due diligence to make them available as payment, and that the burden rests upon him of showing that, without default on his part, they have proved unavailing. Without conceding the correctness of this position, I am ready to admit it for the purposes of the present inquiry. Planting themselves upon this legal proposition, counsel insist that defendant is discharged by the laches of plaintiff. My answer to this position is found in the following considerations : It will be remembered that the certificates were not negotiable, and that the defendant did not indorse them, and is not, therefore, a guarantor, indorser, or party to them, in the sense in which these terms are used in regard to commercial paper. In view of these facts, defendant is not protected by the rules applicable to

negotiable instruments. It may be conceded, however, that defendant would be discharged by negligence of the plaintiff in failing to present the paper within a proper time for payment, and in failing to give defendant notice of its non-payment. It cannot be held that the plaintiff was required to institute suit against the makers of the certificates. His duty was to present them for payment within a reasonable time. In determining what is a reasonable time, we must consider the distance from the place of receiving them to the place of payment, the usual course of business men in collecting such paper, etc., etc. Defendant, when he passed the certificates to plaintiff, impliedly authorized him to collect them in the manner usually pursued with such paper — in such a way as a prudent business man would adopt in such a case.

Collections of this kind are uniformly made through the banks, and by them are sent to their correspondents in cities, which are the money centers of the particular locality of the party or maker of the paper from whom payment is sought. The certificates in question were received by plaintiff in Cass county. He was not a banker. The course of business would not require him to send the instruments directly to Buffalo, where the makers live, for collection. It would be sufficient if he should send the instruments to bankers where he was in the habit of doing business, in Council Bluffs or Des Moines, by them to be forwarded to New York, where all such paper is usually sent, that from that city it might be sent for collection to Buffalo. If it should not be sent off by mail on the day it was received, but the succeeding day, it would not be out of the usual course of business. Now, the plaintiff pursued such a course with the certificates as to bring them within these rules. Upon failure of the drawers of the certificates to pay the same, notice was given to defendant in a manner and at a time that comply with the requirements of the commercial law. This cer-

tainly is sufficient. The evidence shows that plaintiff pursued such a course with the certificates as accords with the general business customs of the country. He could be required to exercise no greater diligence. But we all agree in the view that defendant certainly can claim no greater diligence on the part of plaintiff, than may be demanded by an indorser of like paper. The record shows that an action was brought by plaintiff against the indorsers of the certificates, in which an issue was made as to the diligence of plaintiff, in presenting the paper and giving notice of its non-payment, and tried upon the same evidence by which defendant in this case seeks to establish want of diligence, and a verdict and judgment had for plaintiff. That case was brought to this court (*Huse* v. *Hamblin*, 29 Iowa, 501), and it was held therein that the paper sued on was non-negotiable, and that the indorsers were liable to the holder without proof of presentation and notice of non-payment. But it appears that the instruments were presented in due time, and the failure of the makers to pay being promptly communicated to plaintiff, he immediately, on the 28th day of March, notified defendant of that fact, and that plaintiff would look to him for payment. Now here is diligence sufficient to hold an indorser or guarantor liable for the payment of the instruments. It cannot be possible that defendant, standing in the position he occupies, is entitled to demand greater diligence than such parties to the instruments.

IX. It is insisted that, as plaintiff held the paper until the commencement of this suit, January 17, 1871, without proceeding against the makers, this discharges defendant. But, as we have above observed, plaintiff was not required to bring an action against them. Defendant was notified of the non-payment of the certificates March 28, 1870, and it was his duty thereupon to see that the paper was enforced against the makers. It did not rest upon plaintiff to do so. The fact that plaintiff retained the instruments in his

possession, and prosecuted the indorsers thereon, is not evidence of negligence nor is it a just ground of complaint by defendant. On the contrary, the proceeding was for his benefit. Had he desired to proceed against the makers he could have demanded the certificates from the plaintiff, which he did not do, who would have been required to surrender them. The judgment against the indorsers, together with the certificates, the plaintiff upon the trial offered to transfer to defendant. In all this we can discover nothing that may, with propriety, be charged against plaintiff as negligence, and it is not made to appear that defendant was in the least degree prejudiced by any of these things.

Finally, in our opinion, the findings of fact by the court below are sufficiently supported by the evidence, and the conclusions of law thereon sustain the judgment rendered against defendant.

X. The judgment allows interest at the rate of ten per cent. Counsel of defendant claim that it should be six per cent, as the action is not upon the note or any contract in writing fixing the interest at the rate allowed. But counsel misapprehend the facts upon which they base their position. The action is brought to recover the indebtedness of defendant, on account of the purchase of the land. The contract upon which the indebtedness accrued was embodied in the note and bond of plaintiff, and both expressly provide for interest at ten per centum per annum. In these writings defendant agreed to pay the interest allowed. We have held that the debt remains unpaid, that the contract has not been performed, and that recovery may be had in this action thereon. Plaintiff must be allowed the interest agreed upon. It is true that the action is not brought upon the note, but it is brought to recover the present indebtedness as determined by the contract, which is the sum remaining unpaid, and interest thereon, at the rate of ten per cent per annum.

Affirmed.