EDITH C. PARK, Appellee, v. CORD J. BEST, Appellant.

**BILLS AND NOTES:** Non-Negotiable Instruments—Indorsement—
1 **Effect.** The indorsement in blank of non-negotiable instruments renders the indorser liable to the holder, without demand upon the maker and notice of non-payment.

**BILLS AND NOTES:** Non-Negotiable Instruments—Indorsement—
2 **Presumption—Evidence to Overcome.** The indorsement in blank of a non-negotiable instrument carries the presumption that the indorser intends to and does assume liability thereon without demand on the maker and without notice of non-payment. This presumption is not overcome by a showing (a) that at the time of the indorsement both the indorser and indorsee supposed that the instruments were the equivalent of cash, and (b) that nothing was then said as to the effect which should be given to the indorsement.

**PAYMENT: Conditional Payment—Obligation of Third Party.** In the absence of an express agreement to the contrary, the delivery, by indorsement or otherwise, by a debtor to his creditor of the written obligation of a third party, to apply as a payment on his own debt, operates as a *conditional* payment only—conditional on the said third party's paying his obligation.

**BILLS AND NOTES: Non-Negotiable Instruments—Indorsement—Limiting Liability—Evidence.** Evidence in the form of a supplemental contract reviewed, and held not to limit defendant's liability on his indorsements of certain non-negotiable instruments.

**CONTRACTS: Construction—Different Understandings.** The principle that, ''when the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it,'' has no application when, at the time of the execution of the contract, *nothing was said or done* by either party which would advise either party that the other was misled as to the meaning of the contract. (Section 4617, Code, 1897.)

**NOVATION: Substitution of New Debtor—Burden of Proof.** Where a payee of non-negotiable paper transfers it by blank indorsement to his creditor to apply upon his own individual debt, there is no novation—no substitution of a new debtor—except by an agreement to that effect, and the burden is upon the said payee to so show.

**BILLS AND NOTES: Non-Negotiable Instruments—Indorsement—Default of Maker—Subrogation.** An indorser of a non-negotiable instrument (being the original payee thereof), upon the entry of judgment against him on his indorsement, by reason of the default of the maker, is entitled to the surrender of the instrument; as, in such case, he is subrogated to all the rights of his indorsee therein. But the act of the plaintiff in bringing the instrument into court is a sufficient surrender.

*Appeal from Carroll District Court.*—E. G. ALBERT, Judge.

MONDAY, APRIL 10, 1916.

ACTION at law to recover the amount of six certificates of deposit issued by the Farmers Bank of Glidden, Iowa, to the defendant, and by him endorsed in blank and delivered to the plaintiff. There was a trial to the court without jury, and judgment rendered for plaintiff for the aggregate amount of the certificates sued upon. Defendant appeals.—*Affirmed* and *Remanded.*

*Brown McCrary, L. H. Salinger* and *Ralph Maclean,* for appellant.

*C. C. Helmer* and *H. E. Beach,* for appellee.

WEAVER, J.—On February 28, 1914, plaintiff and defendant entered into a written contract, whereby plaintiff undertook to sell and convey to the defendant certain lands owned by her in Carroll County, Iowa, for an aggregate price of about $25,000. The purchase price was to be paid substantially as follows: $4,500 on or before the signing of the contract, and the remainder in deferred payments, the details of which are not material in this case. In these negotiations, plaintiff was represented by her attorney, C. C. Helmer, and defendant by his own attorney, E. A. Robb. The paper, when executed, was left in Helmer's possession in escrow until a certain outstanding contract with a third person should be taken up and cancelled, a matter which was afterwards duly adjusted. On March 3d, Helmer received, on account of said indebtedness to his client, eight certificates of deposit issued by the bank of Glidden for varying amounts, aggregating $4,125, also defendant's personal check for $333, and gave defendant his receipt therefor, which, after describing the items, concludes as follows:

"The same, including the interest on the said certificates of deposit, being taken at $4,500, to be held in escrow with the contract entered into by C. J. Best with Edith C. Park, for the purchase of land in Jasper Township, Carroll County, Iowa, on February 28, 1914, and to be turned over to said Edith C. Park on the completion of the said contract, as therein stipulated."

The certificates were each made payable in current funds, one year after date, to the order of Cord J. Best, with interest at 5 per cent., and each was endorsed by the defendant in blank at the time that he delivered them to Helmer for plaintiff. On March 31, 1914, the parties entered into a supple-

mental written agreement which, after stipulating the number of acres in the land sold, proceeds as follows:

"It is further agreed that whereas in the payment of the sum of $4,500 upon said contract already made by the said C. J. Best to the said Edith C. Park, wherein certificates of deposit in the Farmers Bank at Glidden, Iowa, were used, the same drawing interest at 5 per cent. for one year from the date of the said certificates, the accrued interest on which, up to March 1, 1914, was $42; and the said C. J. Best has paid to the said Edith C. Park in cash the additional sum of $42 to equal said interest. Now if the said Edith C. Park shall find it necessary to cash any of said certificates before the maturity thereof, she shall be entitled to retain out of the said $42 so paid to her the amount of the interest accrued on any such certificates up to March 1, 1914, and that after the maturity of all such certificates she shall promptly repay to the said C. J. Best the balance of the said sum of $42 above what it is necessary to use therefrom to cover accrued interest to March 1, 1914, on all such certificates as she finds it necessary to cash before their maturity. It being the intention and agreement of the parties hereto that said C. J. Best shall be entitled as a credit on the said sum of $4,500 already paid by him to the proportionate part of all interest accrued on said certificates up to March 1, 1914, which the said Edith C. Park shall allow to mature."

This transaction will be better understood when we remember that the aggregate of the principal of the certificates of deposit and defendant's personal check was but $4,458, thus necessitating the further payment of $42 to make up the full cash installment of $4,500, the matter of accrued interest on the certificates being left to future adjustment, as in the agreement provided.

Thereafter, and before the certificates became due, six of them, aggregating the sum of $2,025, being still in the hands of the plaintiff and unpaid, the bank issuing them failed, and made a statutory assignment for the benefit of its creditors.

As the paper fell due, it was presented for payment, and, payment being refused, notice of protest was duly served upon the defendant as an endorser.

The petition in this case sets out the several certificates and the endorsement thereof by the defendant in separate counts, and demands recovery for the entire amount thereof, principal and interest. The defendant admits the failure of the bank and admits that the certificates were issued to him by the bank for deposits therein made by him. He further pleads the facts of the transaction between himself and plaintiff substantially as hereinbefore recited, and further says that, at or about the time that Helmer receipted to him for the certificates, he (defendant) was about to go to the bank and obtain the money thereon, when plaintiff, or Helmer acting for her, requested him not to do so, but to deliver to them the certificates in lieu of the money; and that, in compliance with said request, and ''with the sole purpose thereby to pay said cash and with no other intent or purpose as plaintiff well knew, he affixed his signature upon the back of the certificates as a means of designating the person who should be entitled to receive said money then at his command at the Farmers Bank of Glidden.'' Upon the fact so pleaded, he asserts that plaintiff is estopped to deny that the payment to her was other than a cash payment, or to assert that, by his action in the premises, he incurred any liability for the non-payment of the certificates. Three additional counts were added to the answer by way of amendment. Each amendment is, however, no more than an allegation of legal conclusion, and adds nothing to the issues of fact already joined. The legal propositions are all restated in argument here, and will be considered in the further progress of this opinion.

The trial court, while holding with the defendant upon the abstract proposition that it was competent for defendant to allege and prove as a defense that the endorsement of the certificates was made and accepted by the plaintiff for the sole purpose of authorizing plaintiff to demand and receive

payment thereof from the bank, and without any intent to create or charge defendant with any liability for their non-payment, yet held that the burden of proving such qualified endorsement was upon him, and he had failed to sustain it by any competent evidence. The court also held that the certificates of deposit, being made payable in current funds, were non-negotiable, and that, defendant having endorsed them in blank, and having failed to show upon the trial that such endorsement was qualified by any agreement or understanding that it was made for the sole purpose of transferring the title to plaintiff, he must be held to have assumed liability for the amount represented by the certificates in the event of their non-payment upon due presentment and demand. So holding, judgment was awarded plaintiff for the full amount of the certificates.

It is not quite easy from the record, pleadings and arguments to definitely delimitate the defense upon which defendant relies. In their brief, counsel deal very largely with generalities and abstract propositions, much of which does not appear to have any special application to the issues joined; while, few, if any, of the "error points" are so stated that we may determine therefrom the very nature of the question sought to be raised. In view, however, of the importance of the controversy to the parties in interest, we shall try to gather the propositions contended for into groups and pass upon them, so far as they seem to be pertinent to the case made by the pleadings.

I. There is but little dispute upon the facts of the case, and it is contended as a matter of law that the findings and judgment of the trial court are without sufficient support in the record. This calls first for a consideration of the character or nature of the certificates of deposit. The court held them to be non-negotiable instruments, and, as this is in line with appellant's contention, we will, without passing upon that point, accept it as the law of the case. We are of the opinion, also, that, upon the theory of the case as tried, and the court's

ruling admitting evidence as to the true intent of the parties, the question as to whether the paper was or was not negotiable is immaterial.

The next inquiry, before we consider the sufficiency of the evidence, is as to the legal effect of the endorsement in blank of a non-negotiable instrument. Quite in point with the case at bar upon this question is the case

1. BILLS AND
   NOTES : non-ne-
   gotiable instru-
   ments : indorse-
   ment : effect.

of *Huse v. Hamblin,* 29 Iowa 501. As in the present case, the action there was upon several certificates of deposit payable in currency, and the court held, as did the court in this case that the paper was non-negotiable. The suit was brought against the endorsers, and judgment recovered. On appeal, this court affirmed the judgment, saying:

"The certificates of deposit being non-negotiable, the indorsers thereof are liable to the holders without demand on the maker and notice of non-payment" (citing *Wilson v. Ralph,* 3 Iowa 450; *Long v. Smyser & Hawthorne,* 3 Iowa 266; *Hall v. Monohan,* 6 Iowa 216; *Billingham v. Bryan,* 10 Iowa 317).

Reaffirming this holding, see *Huse v. McDaniel,* 33 Iowa 406; *Lynch v. Mead,* 99 Iowa 66, 68; *Dille v. White,* 132 Iowa 327, 342. These decisions have never been overruled, and, moreover, they are in entire harmony with the whole current of authority on the subject.

We must also hold that no such defense was established as would justify the court in holding that there was any agreement or understanding by which the endorsement was not to have its ordinary legal effect, or that it

2. BILLS AND
   NOTES : non-ne-
   gotiable instru-
   ments : indorse-
   ment : pre-
   sumption : evi-
   dence to over-
   come.

was to be treated as a mere assignment or transfer of title, without the assumption of any liability on defendant's part. Neither the defendant nor any other witness pretends to swear or say that any such agreement was made or proposed. The most they say is that the subject of the effect of the endorsement was neither mentioned nor dis-

cussed. Whether such qualification of a blank endorsement can be established except upon express agreement therefor, we need not decide; for we are quite clear that in any event the mere failure of the parties to the negotiation to mention or discuss the subject, or (as is the substance of the showing in this case) the entire lack of thought concerning it, is wholly insufficient to overcome the legal presumption that he intended thereby to assume the liability which ordinarily attaches to the endorser of such paper. It may be true, as counsel argue, that the conduct of the parties indicates their mutual confidence that the certificates were perfectly good and would surely be paid when due, if not before, and that in actual value the paper was the equal of so much cash. It may also be true that, had the question then arisen between them, plaintiff might have been willing to take the certificates as full payment to that extent, and thereby have relieved the defendant from further responsibility thereon; but it is sufficient for the purposes of this case that she did not do so. Again, the very confidence of the defendant in the solidity of the bank may well have led him to be entirely willing to endorse the paper, if necessary to the closing of the deal.

II. There is still another feature the effect of which appellant overlooks. The transaction was not an exchange of lands for the certificates of deposit. Nor was it in any proper sense a sale of the certificates. Defendant first 3. PAYMENT: con-ditional pay-ment: obliga-tion of third party. became indebted to plaintiff upon his contract for the purchase of the land, which required him to make an initial payment of $4,500 in cash. The matter of transferring the certificates, though soon thereafter taken up, was no part of the original agreement. More briefly stated, the defendant, being indebted to plaintiff to an amount in excess of the certificates of deposit, turned them over to plaintiff, and she received them to apply on that obligation. It is practically the universal rule that, in the absence of an express agreement to the contrary, the delivery by a debtor to his creditor of the note or other written obliga-

tion of a third party, to apply as a payment in whole or in part of his own debt, operates as a conditional payment only, and, if the note or obligation so delivered is not paid or proves worthless, a right of action still remains to the creditor upon the original debt. And this is true though nothing is said between them upon that subject. *Dille v. White, supra,* and see other authorities cited on the same proposition in note to same case in 10 L. R. A. (N. S.) 510. That rule is not strictly applicable here, because plaintiff's action is brought upon the contract of endorsement, and not upon the original debt; but it does have a bearing upon the agreement which the law implies from such endorsement. Had defendant not endorsed the certificates at all, he would still have been liable upon the original debt, under the rule just mentioned, unless he could prove that plaintiff received them with an agreement that the delivery should operate as a payment or cancellation *pro tanto* of defendant's obligation. The presumption is to the contrary, and it is incumbent on the defendant to allege and prove that the paper was delivered and received as an absolute payment to that amount. The rule would not be different, even if defendant had endorsed the certificates without recourse. Such an endorsement would have relieved him from liability upon his endorsement, but would not necessarily relieve him from his original obligation. When, however, he endorsed them in blank, he, at the most, to that extent substituted his liability as endorser for his liability upon the original debt. Thus, in the final outcome, if the defendant fails to prove that the paper was received by plaintiff as an absolute payment, it makes little difference to the defendant whether he is required to pay in his capacity as an original debtor or as an endorser. The case of *Huse v. McDaniel,* 33 Iowa 406, already cited, affords instructive reading upon this point. See also *Gower v. Halloway,* 13 Iowa 154. The whole subject is fully considered and the authorities quite fully reviewed by us in *Dille v. White, supra,* and we are not disposed to depart from the rules there approved.

III. Counsel urge the thought that the supplemental contract, made on March 3, 1914, is, in effect, a substituted agreement, entirely superseding the first contract and creating another and different relation between the parties, so far, at least, as it affects the matter of the certificates of deposit. We can discover no such purpose or intent in the writing. It does no more than recite the fact that, since the original agreement was executed, defendant had turned over to plaintiff certain certificates of deposit, and that the realization of interest thereon depended upon their being held until due before asking payment from the bank. It also contemplated the possibility that plaintiff might desire to cash some of the certificates before due, and thereby lose a part of the interest. A plan was therefore agreed upon by which, at the end of the period when the full amount of interest earned and received could be ascertained, defendant should be entitled to such part as was earned prior to March 1, 1914, and plaintiff, to the remainder. This is in no manner a substitute for any former agreement. It recognizes, of course, the fact of a former agreement for the sale of the land and the later transfer of the certificates as things already accomplished, but adds nothing new, except a specific plan for adjusting the item of interest between them. Defendant's liability, if any, upon the endorsement had already accrued, and plaintiff's right to reply on the benefit thereof was already complete, and neither is increased nor diminished by the supplemental writing.

4. BILLS AND NOTES: non-negotiable instruments: indorsement: limiting liability: evidence.

Appellant also argues that he entered into the agreement with no thought or intent to make himself personally liable upon his personal endorsement, that plaintiff had reason to know that such was the fact, and that the agreement should now be construed as against her in the sense which she knew, or ought to have known, was intended by him. But the record makes no case for the application of the rule so invoked.

5. CONTRACTS: construction: different understandings.

Defendant concedes that he did not speak of the matter at all, nor do we find any evidence of anything said or done which should have advised plaintiff that he was being misled as to the meaning or legal effect of his endorsement.

Something is claimed for the effect of the defendant's making a cash payment of $42 at or about the time that the supplemental contract was made. There would seem to be no mystery about this item. It will be remembered that defendant's payment was to amount to $4,500. He turned over certificates to the principal amount of $4,125, and gave his check for $333, making a total of $4,458, leaving a margin of $42. We may assume from the situation, though it is nowhere clearly stated, that this was the estimated amount of interest then accrued upon the certificates, and later, when it developed that the bank would not pay the interest unless the certificates were allowed to mature, defendant paid plaintiff the sum in money, subject to the terms of the supplemental agreement. We discover no error in the failure of the trial court to apply the payment of this small item upon the claim in suit. In the first place, it is not pleaded as a counterclaim, and, in the second, there is no pretense that it was intended to apply in discharge of defendant's liability on his contract of endorsement. There is no more reason for giving credit therefor, as appellant now demands in argument, than there would be in demanding similar credit for the sum of $333, which he paid at the time that the certificates were transferred to plaintiff.

IV. The further point is made that the effect of the transaction was a novation by which the bank became primarily and directly liable to the plaintiff, and defendant was to that extent discharged from his debt. That is only stating in another way the same proposition which we have already considered in the first paragraph of this opinion. We have there shown that, where a payee of non-negotiable paper trans-

6. NOVATION: substitution of new debtor: burden of proof.

fers it by blank endorsement to his creditor to apply upon his own individual debt, there is no novation except by an agreement to that effect, and the burden is upon him to establish it. And again we repeat that there is not a word of evidence that any such agreement was made or any such proposition mentioned. We are asked, however, to infer such an understanding from the conduct of the parties and from the terms of the supplementary contract; but, as there is nothing in the language of that contract or in the conduct of either party which is necessarily inconsistent with the presumption that defendant made the endorsement intending and expecting it to have its ordinary legal effect, his present denial of such intention is not sufficient to satisfy the burden of proof which the law lays upon him.

V. The certificates each provide for payment at maturity "upon surrender of this certificate properly assigned and endorsed;" and, upon the trial below, defendant objected to the entry of judgment against him because 7. BILLS AND NOTES: non-negotiable instruments: indorsement: default of maker: subrogation. plaintiff did not surrender or offer the certificates. The suit was brought upon defendant's contract of endorsement, the certificates were set out in the pleadings, and were brought into court at the trial. This, we think, was a surrender, within the meaning of the language above quoted, and the court did not err in overruling this objection to the entry of judgment. But we are not quite certain that we understand the intended effect of the court's statement in its opinion that this provision for the surrender of the certificate "was wholly for the benefit of the original maker, the bank, and I can see nothing in it for the defendant." If by this is meant that defendant, by payment of the judgment against him in discharge of his liability as an endorser or guarantor, acquires no right in or to the certificates as a basis of a claim against the bank, it is a conclusion in which we cannot concur. Neither the bank nor its assignee has any right to demand or receive a surrender of the certificates until it has paid the

debt which they represent.  If the defendant pays this judgment to the full amount of the bank's debt upon the certificates, it will not operate as a payment or cancellation of the certificates, but, on so performing the judgment, defendant will be subrogated to all the rights of the plaintiff under the certificates, and entitled to receive the dividend, if any, made thereon by the assignee.  We speak of this matter here, not because it is vital to the validity or enforcement of the judgment, but to avoid any misapprehension in the future as to its bearing upon the relative rights of the parties in the settlement and adjudication of the estate of the insolvent bank.  To this end, we think that the record of the judgment below should be modified by adding a clause thereto substantially as follows:

"This adjudication is without prejudice to the right of the defendant upon payment of said judgment to demand and receive the certificates of deposit described in the petition in this case and to collect and receive all dividends which have been or may hereafter be made thereon by the bank's assignee for the benefit of its creditors."

The transaction was an unfortunate one for the defendant, but we can find nothing in the record to indicate that he has suffered any wrong except at the hands of the bank, and that is a matter which is not before us.  We therefore conclude that the judgment must be affirmed, but the cause will be remanded for the modification of the record as above indicated.

*Affirmed* and *Remanded* for an amendment of the record.

EVANS, C. J., DEEMER and PRESTON, JJ., concur.