[No. 10083. Department Two. May 1, 1912.]

WILLIAM RIDDOCH, *Appellant*, v. THE STATE OF
WASHINGTON, *Respondent.*[1]

STATES—ACTIONS—LIABILITY FOR TORTS—STATUTES—CONSTRUCTION.
No cause of action is created or liability imposed upon the state by
Const., art. 2, § 26, providing that the legislature shall direct by law
in what manner and in what courts suits may be brought against
the state, nor by Rem. & Bal. Code, § 886, providing that any person
having a claim against the state shall have the right to begin an
action against the state in the superior court of Thurston county.

STATES—ACTIONS—LIABILITY FOR NEGLIGENCE—ACTS OF OFFICERS
—GOVERNMENTAL FUNCTIONS—SOVEREIGNTY. In the absence of vol-
untary assumption of the obligation, the state is not liable for the
torts or negligence of its officers or agents; and this applies to per-
sonal injuries to a spectator, sustained through a defective railing
in a state armory, negligently constructed by a state commission
created for the purpose, and leased for a compensation to private
parties by the state officer in charge of it for the purpose of giving
a public exhibition; since the state's immunity from liability is not
confined to the discharge of purely governmental functions of the
state, the sovereignty of the state extending to any private enter-
prise taken over or administered by the state.

STATES—SOVEREIGNTY—PRIVATE ENTERPRISES — LEASE OF ARMORY.
Rem. & Bal. Code, § 7334, authorizing the leasing of state armories
for purposes other than military, upon recommendation of the officer
in charge, does not relinquish the state's governmental functions
or amount to the assumption of a private enterprise, where the
armory was constructed for governmental purposes and there is
nothing in the military code showing any intent that the state
shall engage in conducting a hall for entertainment purposes as a
business venture; the lease being a matter of grace and accommo-
dation to the public rather than a business enterprise.

STATES—LIABILITY FOR TORTS—CONTRACTS. The fact that the
state makes a contract—the lease of an armory—does not create a
liability for a tort committed by its officers in connection with the
subject-matter of the contract, or make the action arising thereon
one on contract.

STATES—SOVEREIGN POWERS—LIABILITY. The state, through its
legislature alone, has the sovereign power to waive its immunity
from liability for torts.

[1]Reported in 123 Pac. 450.

Appeal from a judgment of the superior court for Thurston county, Bell, J., entered November 27, 1911, dismissing an action in tort, upon sustaining a demurrer to the complaint. Affirmed.

*J. L. Waller* and *Reynolds, Ballinger & Hutson,* for appellant.

*The Attorney General* and *S. H. Kelleran, Assistant,* for respondent.

ELLIS, J.—This is an action to recover damages for personal injuries, sustained by the plaintiff through the giving way of the railing of a gallery in the armory building, in the city of Seattle. A demurrer to the complaint was sustained. The plaintiff declined to plead further, and the action was dismissed. The plaintiff appeals.

The complaint alleges, in substance, that at the time of the accident the armory had been leased for the sum of fifty dollars for the night, to the Seattle Athletic Club, which was holding therein an athletic entertainment; that, during the entertainment and at a time of excitement, numbers of spectators in the gallery leaned upon and over the rail, causing it to give way and fall, precipitating the rail and some of the persons in the gallery upon the plaintiff, who was standing upon the floor below, inflicting the injuries complained of.

It is charged as negligence that the railing was heavy and not securely fastened nor properly braced, in view of the purpose for which the building was leased; that another obvious and easy method of fastening and bracing the railing should have been employed; that the defective construction and bracing of the railing was not apparent to ordinary inspection, but the exercise of ordinary care on the part of the state would have led to a discovery of the defective condition, and that the defendant failed to exercise such care and failed to make proper inspection; that no notice or warning was given to the plaintiff, or to any one, of the defective condition; that the defendant failed to prevent the admission of

persons to the gallery, and failed to prevent them from lean-
ing against and pushing upon the defective railing.

There can be no doubt but that, if the armory had been
owned by a private individual, the negligence pleaded would
have been sufficient to entail a liability for the injury. There
is, therefore, presented as the dominant question for solution,
whether, under the facts pleaded, the state as owner is liable
as a private owner would be? The first inquiry going to the
solution of the question is, Whose was the negligence? It is
manifest that it was that of some of the officers or agents of
the state, since the state can only act through officers or
agents. The act (Laws 1907, ch. 55, p. 83) in pursuance
of which the armory was constructed made an appropriation
therefor, created a commission, and clothed it with the au-
thority and charged it with the duty to bring about the con-
struction of the building. If the defect was one of original
construction, whether in plan, work or material, then plainly
the negligence was that of this commission or of its agents.

The military code (Laws 1909, ch. 134, p. 494, § 97; Rem.
& Bal. Code, § 7334), by implication authorizes the leasing
of armories for purposes other than military, but contains
the proviso, "that no armory shall be used for any other than
a strictly military purpose without the recommendation of
the officer in charge thereof." It is, therefore, a part of the
official duty of the officer in charge to determine when and
for what purpose, other than military, the armory may be
used. It follows that, if it was unfit for the purpose desired,
it was the duty of that officer to withhold his recommenda-
tion, and his failure to do so was negligence in his official
capacity. If the state can be held liable for the negligence
charged, it must be upon the ground that it can be held for
the negligence either of the commission or of the officer in
charge.

The state constitution, § 26 of article 2, says:

"The legislature shall direct by law in what manner and in
what courts suits may be brought against the state."

This provision creates no cause of action—imposes no liability, as against the state, where none would exist independently of it. It merely directs the legislature to provide a remedy for causes of action recognized at common law as against the sovereign or created by statute.

Pursuant to this constitutional provision, the legislature, by the Laws of 1895, p. 188, § 1 (Rem. & Bal. Code, § 886) enacted that:

"Any person or corporation having any claim against the state of Washington shall have the right to begin an action against the state in the superior court of Thurston county."

The word "claim" as used in this section is synonymous with "cause of action." The scope of the section is the same as that of the constitutional provision. *Northwestern & Pacific Hypotheek Bank v. State*, 18 Wash. 73, 50 Pac. 586, 42 L. R. A. 33. It creates no cause of action. It provides a remedy for existing causes but imposes no new liability. It does not waive any defense. *Billings v. State*, 27 Wash. 288, 67 Pac. 583.

The doctrine that a sovereign state is not liable for the misfeasance, malfeasance, nonfeasance or negligence of its officers, agents or servants, unless it has voluntarily assumed such liability, is established by authority so cogent and uniform that isolated expressions which might be construed as tending to the contrary are negligible. This court has clearly announced that doctrine in *Billings v. State, supra,* an action to recover damages resulting from delay of the commissioner of public lands in issuing a state land sale contract. The court thus stated the issue:

"The sole question to be determined is whether the complaint herein states a cause of action against the respondent; or, in other words, whether the state, under our statute, is liable for damages suffered by an individual by reason of the negligence or malfeasance of one of its officers occurring while engaged in the discharge of his official duty."

Meeting this issue, the court said:

"It [the state] has not consented, either expressly or impliedly, to become responsible for the misconduct or negligence of its officers or agents; and, in the absence of a statute making it liable in damages therefor, no such action as the present one can be maintained against the state."

This rule of nonliability for torts is tersely expressed by the United States supreme court in *Robertson v. Sichel*, 127 U. S. 507, 515, as follows:

"The government itself is not responsible for the misfeasances, or wrongs, or negligences, or omissions of duty of the subordinate officers or agents employed in the public service; for it does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs; since that would involve it, in all its operations, in endless embarrassments, and difficulties, and losses, which would be subversive of the public interests. Story on Agency, Sec. 319; *Seymour v. Van Slyck*, 8 Wend. 403, 422; *United States v. Kirkpatrick*, 9 Wheat. 720, 735; *Gibbons v. United States*, 8 Wall. 269; *Whiteside v. United States*, 93 U. S. 247, 257; *Hart v. United States*, 95 U. S. 316, 318; *Moffat v. United States*, 112 U. S. 24, 31; *Schmalz's Case*, 4 C. Cl. 142."

The following authorities declare and exemplify the rule. Some of them expressly declare, and through all of them runs the controlling principle, that the exemption is based upon absence of obligation and not upon mere absence of remedy. *Belknap v. Schild*, 161 U. S. 10; *German Bank of Memphis v. United States*, 148 U. S. 573; *State v. Mutual Life Ins. Co.* (Ind.), 93 N. E. 213; *Moody v. State's Prison*, 128 N. C. 12, 38 S. E. 131, 53 L. R. A. 855; *Bourn v. Hart*, 93 Cal. 321, 28 Pac. 951, 27 Am. St. 203; *Murdock Parlor Grate Co. v. Commonwealth*, 152 Mass. 28, 24 N. E. 854, 8 L. R. A. 399, 402; *Overholser v. National Home etc.*, 68 Ohio St. 236, 67 Pac. 487, 96 Am. St. 658, 62 L. R. A. 936; *Lewis v. State*, 96 N. Y. 71, 48 Am. Rep. 607; *Clodfelter v. State*, 86 N. C. 51, 41 Am. Rep. 440; *Claussen v. City of Luverne*, 103 Minn. 491, 115 N. W. 643, 15 L. R. A. (N. S.)

698; *State v. Hill*, 54 Ala. 67; *Elmore v. Fields*, 153 Ala. 345, 45 South. 66, 127 Am. St. 31; Story, Agency (9th ed.), § 319; 36 Cyc. 881.

The appellant seeks to confine this rule of nonliability for torts to cases where the negligence of the officer or agent occurred in the discharge of some purely governmental function of the state. He contends that, in leasing the armory, the state was engaged in a private enterprise, and that the rule of nonliability, therefore, does not apply. The question is admittedly a new one. No authority distinctly so holding, nor indeed recognizing such an exception, has been cited, and we have found none. It is argued that the distinction is sustained by analogy to a similar exception to the rule of nonliability as applied to municipal corporations. The analogy, however, does not hold. Municipal corporations enjoy their immunity from liability for torts only in so far as they partake of the state's immunity, and only in the exercise of those governmental powers and duties imposed upon them as representing the state. In the exercise of those administrative powers conferred upon, or permitted to, them solely for their own benefit in their corporate capacity, whether performed for gain or not, and whether of the nature of a business enterprise or not, they are neither sovereign nor immune. They are only sovereign and only immune in so far as they represent the state. They have no sovereignty of their own, they are in no sense sovereign *per se*. Their immunity, like their sovereignty, is in a sense borrowed, and the one is commensurate with the other. Such is, in effect, the conclusion reached in *Hill v. Boston*, 122 Mass. 344, 23 Am. Rep. 332, after a most exhaustive review of the authorities, both American and English. The same principle underlies our own decisions. *Sutton v. Snohomish*, 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; *Russell v. Tacoma*, 8 Wash. 156, 35 Pac. 605, 40 Am. St. 895; *Cunningham v. Seattle*, 42 Wash. 134, 84 Pac. 641; *Linne v. Bredes*, 43 Wash. 540, 86 Pac. 858, 117 Am. St. 1068, 6 L. R. A. (N. S.) 707.

On the other hand, the state is inherently sovereign at all times and in every capacity. It is the organized embodiment of the sovereign power of the whole people. By reason of this sovereignty, it possesses all powers, but only such powers, as are within the limitations of the state constitution and without the prohibitions of the Federal constitution. It can do no act except in the exercise of this sovereign power and within these constitutional limitations. If it may constitutionally take over any enterprise, though usually of the nature of a private business, the very taking over is an exercise of this sovereign power. It seems much more logical and much more consonant with the idea and genius of sovereignty that the enterprise thus taken over should be impressed with the sovereign character of the state than that the state should become hampered by the private character of the enterprise. The latter result is incompatible with the concept of sovereignty.

This seems to us to be the only logical basis for the following decisions holding the state not liable for torts in connection with the administration of such enterprises taken over by the state: *State v. Hill, supra*, in which the state was held not liable at the suit of an owner for the tortious killing of stock by the agents of the state in operating a railroad; *Melvin v. State*, 121 Cal. 16, 53 Pac. 416, in which the state was held not liable to a spectator who had paid for admission to a state fair conducted by an agency of the state for a tortious injury by the falling of negligently constructed seats; *Denning v. State*, 123 Cal. 316, 55 Pac. 1000, in which the state was held not liable to an employee injured by the fall of a negligently fastened ladder on a tug boat owned by the state and operated by the state harbor commissioners as an agency of the state.

But whatever the true basis of these decisions, they are in direct opposition to appellant's contention that the state is liable for torts committed by its officers or agents in the administration of any enterprise, whenever a private person

conducting the same kind of enterprise would be liable for similar torts. On the other hand, we know of no authority supporting this contention.

The English cases, *Jones v. Mersey Docks*, 11 H. L. Cases, 443, and *Mersey Docks Trustees v. Gibbs*, 11 H. L. Cases, 686, relied upon by the appellant, cannot be so read. The liability, in the one case for a poor rate and in the other for a tort, was not based in either instance upon the fact that the dock board were occupiers for profit, but upon the fact that they were not occupying for the crown. The board was thus, in effect, held to be a municipal corporation. These cases are exhaustively discussed as bearing upon the liability of municipal corporations by Chief Justice Gray in *Hill v. Boston* (122 Mass. 344), 23 Am. Rep. at pages 354, 355, 356, where that distinguished jurist points out that the true basis of these decisions is that corporations created to construct and maintain public works of a peculiar nature in a certain locality were liable to private action for special injuries "for the very reason that they did not occupy as servants of the public or government." Manifestly they could not partake of the sovereign's immunity.

The other English case cited, *Moodalay v. East India Co.*, 1 Brown's Ch. 469, is even less pertinent. The East India Company, a commercial corporation, had been entrusted with the government of India. The master of the rolls, in holding the company liable for breach of its private contract, said:

"I admit that no suit will lie in this court against a sovereign power, for any thing done in that capacity, but I do not think the East India Company is within that rule. They have rights as a sovereign power, they also have duties as individuals; if they enter into bonds in India, the sums secured may be recovered here. So in this case, as a private company, they have entered into a private contract, to which they must be liable."

The case of *South Carolina v. United States*, 199 U. S. 437, has no bearing upon the question here presented. The

sole question decided was that the liquor traffic, being sub-
ject to antecedent excise laws of the United States, when
taken over by the state was still subject to those laws; purely
a question of conflict of laws. This fact is clearly pointed
out and the decision limited to that single question by the
subsequent case of *Murray v. Wilson Distilling Co.*, 213
U. S. 151.

Even assuming that there may be, on sound principles,
the same rule of liability as applicable to private persons or
corporations where the state engages in a purely private en-
terprise with the intention of prosecuting it for profit, the
complaint, when taken, as it must be, in connection with the
statute, fails to show that the state in leasing the armory
was so engaged. The armory, by the terms of the act
authorizing its construction (Laws 1907, ch. 55, p. 83 *et
seq.*), was constructed for governmental purposes. The of-
ficers in charge and conducting the business in connection
therewith (Rem. & Bal. Code, § 7334) are primarily dis-
charging governmental functions. The implied authority
to lease, on occasion, but only on the recommendation of the
officer in charge, cannot be held to control the dominant
purpose of the act as a governmental measure and make of
the armory a business enterprise. There is in the whole
military code no intention, either expressed or implied, that
the state shall engage in conducting a hall for entertainment
purposes as a business venture for profit. The whole en-
terprise, as evinced by the military code, lacks this essential
element of a business venture. The fact that the legislature,
foreseeing that there might be occasions when the public
would require a meeting place which would accommodate a
large number of people, such as the armory affords, ac-
corded, as a mere incident to the general powers of the officer
in charge, the power to recommend that the armory might
be so used, does not sustain a contention that the state has
relinquished its governmental functions and assumed a pri-
vate capacity. This, in any view of the matter, could only

be done by conducting a business purely for profit as it is usually and ordinarily conducted by private persons—that is to say, as a business. Nor does it alter the case that a charge was made for the use of the building. That was a mere incident in no manner changing the main design. As illustrating the point, the dispensary act of the state of Georgia may be instanced. By that act the state took over the liquor business and administered it through the instrumentality of public officers. A charge for the liquors dispensed was a necessary incident. The supreme court of Georgia, in considering that phase of the act, used the following language:

"It is manifest that the primary object of this dispensary act was not for the purpose of gain, and embarking a municipality in a commercial enterprise, but that the end and purpose had in view was a regulation of the sale of an injurious and dangerous beverage, in the interest of temperance, and for the purpose of throwing a safeguard around the morals of the people. The revenue derived from this source was merely one of its incidental features." *Plumb v. Christie*, 103 Ga. 686, 30 S. E. 759, 42 L. R. A. 181-186.

By a statute of California, the harbor commissioners were given control of the harbor of San Francisco, with the duty of constructing and operating wharves, and as an incident thereto of charging and collecting wharfage. In answer to a contention that this placed the state in the position of engaging in a business enterprise for profit, the supreme court of that state said:

"The fact that the board is authorized or required to collect tolls and charges for dockage and wharfage to such extent 'as will enable the commissioners to discharge the duties required of them by the act' does not affect its character as a governmental agency. . . . So here, the fact that the board is authorized and required to collect tolls and charges under the act does not make the board an instrument or agency of the state for profit, or convert it into a mere business enterprise." *Denning v. State*, 123 Cal. 316, 55 Pac. 1000.

In this connection, see, also, *Melvin v. State,* and *State v. Hill, supra.* The permission to use the armory was a matter of grace and accommodation to the public rather than a business enterprise. An intent to use the armory as a source of profit is nowhere in the act shown to have been in the legislative mind.

The contention that this is an action on contract and not in tort cannot be sustained. The fact that the state, in making a contract, assumes a liability on the contract, does not create a liability for a tort committed by its officers or agents in connection with the subject-matter of the contract, and for which the contract furnishes no basis for a measure of damages. Suppose the building had been a theater owned and operated by private persons, the plaintiff's action would still be in tort and not for breach of contract. The same elements are present in every case of injury to a passenger on a railroad or street car. The duty to carry safely is assumed by contract, but the action is in tort. A similar contention was advanced in *Billings v. State, supra,* but this court denied liability because the action was for a tort. The case of *Chapman v. State,* 104 Cal. 690, 38 Pac. 457, 43 Am. St. 158, does not militate against this view. There the state was held liable upon a contract of bailment, as is pointed out in the later case of *Denning v. State, supra,* at page 323, where it is said:

"Here the contract of employment has nothing whatever to do with the liability except to create a duty on the part of the employer, a duty not expressed in the contract, and for the violation of which the contract of employment furnishes no rule or standard for the estimation of damages; nor is the action grounded upon the contract, but upon the duty springing from the relation created by it, viz., that of employer and employee, and under the old system of pleading was always classed as an action *ex delicto.*"

In *Hill v. United States,* 149 U. S. 593, it is said:

"The United States cannot be sued in their own courts without their consent, and have never permitted themselves

to be sued in any court for torts committed in their name by their officers. Nor can the settled distinction, in this respect, between contract and tort, be evaded by framing the claim as upon an implied contract."

See, also, *Gibbons v. United States,* 8 Wall. 269, and *Melvin v. State, supra.* The New York case cited by the appellant, *Burke v. State,* 64 Misc. Rep. 558, 119 N. Y. Supp. 1089, is not apposite, except as illustrating the fact that there is a liability for tort where the state assumes it by statute which was the basis of the liability in that case.

See, also, *Sipple v. State,* 99 N. Y. 284, 1 N. E. 892, 3 N. E. 657; *Splittorf v. State,* 108 N. Y. 205, 15 N. E. 322.

There is no statute whereby this state has assumed a liability for the negligence or misfeasance of its officers or agents, and we find no established principle of law sustaining such a liability in the absence of such statutory assumption. No consideration of hardships to be avoided would justify a court in abrogating established principles of substantive law to create a liability not so assumed. To change substantive law is the province of the legislature not of the courts. Nor can the argument that it is the tendency of the times for states to take over and administer for the people interests and enterprises heretofore deemed of a private nature alter the case. On the contrary, the state can only do these things in the exercise of its sovereign and constitutional powers; and as part and parcel of these same sovereign powers, it alone may say through its legislature when and how it shall waive its immunity from liability for tort.

The importance of the question and the able and earnest manner in which it has been presented merit the full consideration which we have given it.

The demurrer was properly sustained. The judgment is affirmed.

DUNBAR, C. J., FULLERTON, MOUNT, and MORRIS, JJ., concur.