ROBERT L. BLAND, JUDGE,
dissenting.
Fully recognizing the atrocity of the crimes of the convict James Chambers and the laxity of discipline maintained at the Huttonsville medium security prison I am nevertheless constrained to oppose a recommendation for an appropriation of the public funds in this case.
*192 It is doubtful, to say the least, whether the Legislature in creating the Court of Claims had in mind or contemplated the filing and prosecution of a claim of the character such as the one under consideration. From time to time claims against the state must necessarily arise for the payment of which it would be eminently proper for the Legislature to make appropriations within the limitations of its powers, since the purpose of the Court Act is to provide a simple and expeditious method for the consideration of such claims which because of the provisions of section 35, aritcle 6 of the constitution of the state and of statutory restrictions, inhibitions or limitations cannot be determined in a court of law or equity. The jurisdiction conferred upon the court is limited, I think, to demands resting upon legal basis. “Claim” is defined to be “a demand of a right or alleged right; a calling on another for something due or alleged to be due; as, a claim of wages for services.” Century Dictionary. No liability against the state was created by the Court of Claims Act where no liability existed before its enactment. If the state were suable the instant claim could not be maintained; such a claim is against public policy. By reason of the inhibitions against suit contained in the constitution of West Virginia our state is incapable of giving its consent to be sued, wherefore for the consideration of proper and meritorious claims against the sovereign power the State Court of Claims owes its origin as a special instrumentality of the Legislature where all such claims are finally passed upon and adjudicated. In a jurisdiction where consent to be sued may be given the state does nothing more than waive its immunity from action. Smith v. State, 227 New York 405; 125 N. E. 841; 13 ALR 1264. It does not thereby concede its liability in favor of the claimant or create a cause of action in his favor which did not theretofore exist. Davis v. State, 30 Idaho 137; 163 Pacific 373; Ann. Cases 1918-D, 911.
It is the peculiar function of the Court of Claims to assist the Legislature in its consideration of all claims asserted against the state. It is important to know whether the legislative body *193 desires the court to be guided by law or to make recommendations according to the respective reactions of its members. In 49 American Jurisprudence under the title Liability of State and State Officers, Section 73, page 284, this enlightening information is stated:
“The liability of a state in its ordinary affairs is somewhat different from that of a private individual. Under ordinary circumstances, it can sustain a liability only by reason of a contractual obligation. It is not liable for the tortious acts of its officers. And where a governmental duty rests upon a state or any of its instrumentalities, there is absolute immunity in respect to all acts or agencies. There is no moral obligation upon the part of the state which can be enforced upon equitable principles alone. The state is not liable as an individual or private corporation may be on the ground that its agent acted upon an apparent authority which was not real. It is not bound to compensate an individual employee for injuries sustained while in its seryice, and no right of recovery in favor of such employee exists by inference or legal construction, or otherwise than by statute. It is not the policy of states to indemnify persons for loss, either from lack of proper laws or administrative provisions, or from inadequate enforcement of laws or the inefficient administration of provisions which have' been made for the protection of persons and property ...”
And in Section 76 of the same volume, under the title For Torts of Officers, this universally accepted rule is stated:
“The rule is well settled that the state, unless it has assumed such liability by constitutional mandate or legislative enactment, is not liable for injuries arising from the negligent or other tortious acts or conduct of any of its officers, agents, or servants, committed in the performance of their duties. ' In other words, the doctrine of respondeat superior does not apply to sovereign states unless through their legislative departments they assume such liability voluntarily.
*194 “While there is authority to the contrary, the general rule is that the exemption of the state from-liability for torts of its officers and agents does not depend upon the state’s immunity from suit without its consent, but rests upon grounds of public policy which deny the liability of the state for such damages. It is based upon the sovereign character of the state and its agencies, and the absence of obligations on the part either of the state or such agencies, and not upon the ground that no remedy has been provided. Under this general rule a state is not answerable in damages for injuries sustained by, or the death of, a convict in prison through the negligence of the prison officers, in the absence of any voluntary assumption of liability.
“The distinction recognized in municipal law, in determining the liability of municipal corporations for tort, between acts and duties which are strictly public and governmental in their nature and those which are of a private or proprietary nature does not appear to control the question of liability of the state for tort. The rule of nonliability of the state for torts of its officers, although often stated in terms indicating it to be a rule of nonliability when the officer is exercising a governmental function, does not appear to be limited to cases where the act of the officer or agent occurred in the discharge of some purely governmental function of the state.”
In the case of Allen v. Board of State Auditors, 122 Mich 324, it is held that:
“A petition for compensation by a citizen who .served a term in prison for a crime of which, it is alleged, he was innocent is not a ‘claim’ which the board of state auditors may be authorized to pass upon under article 8, section 4 of the Constitution, creating such board ‘to examine and adjust all claims against the state;’ claims, within the meaning of such provision, embracing only demands based on legal grounds.”
*195 In Riddoch v. State, 68 Wash. 329; 123 Pacific 450; Am. & Eng. Annotated Cases, Vol. 30, page 1033, it is held;
"In the absence of voluntary assumption of the obligation, the state is not liable for the torts or negligence of its officers or agents; and this applies to personal injuries to a spectator, sustained through a defective railing in a state armory, negligently constructed by a state commission created for the purpose, and leased for a compensation to private parties by the state officer in charge of it for the purpose of giving a public exhibition: since the state’s immunity from liability is not confined to the discharge of purely governmental functions of the state, the sovereignty of the state extending to any private enterprise taken ovér or administered by the state.’’
In the opinion in ‘he above case. Judge Ellis says:
"The doctrine that a sovereign state is not liable for the misfeasance, malfeasance, nonfeasance or negligence of its officers, agents or servants, unless it has voluntarily assumed such liability, is established by authority so cogent and uniform that isolated expressions which might be construed as tending to the contrary are negligible.”
The rule of a state’s nonliability for torts is stated by the United States Supreme Court in Robertson v. Sichel, 127 U. S. 507, 515; 8 S. Ct. 1286; 32 U. S. (L. ed.) 203, as follows:
“The government itself is not responsible for the misfeasances, or wrongs, or negligences, or omissions of duty of the subordinate officers or agents employed in the public servcie; for it does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs; since that would involve it, in all its operations, in endless embarrassmets, and difficulties, and losses, which would be subversive of the public interests. Story on Agency, Sec. 319; Seymour v. Van Slyck, 8 Wend. 403, 422; United States v. Kirkpatrick, 9 Wheat, 720, 735; Gibbons v. United States, 8 Wall, 269; Whitside v. United *196 States, 93 U. S. 247, 257; Hart v. United States, 95 U. S. 316, 318; Moffat v. United States, 112 U. S. 24, 31; Schmalz’s Case, 4 C. Cl. 142.”
I do not think that the instant claim is one that may be properly prosecuted against the stare; but I realize that the state, through its Legislature alone, has the sovereign power to waive its immunity from liability for torts. I do not think, however, that the mere ratificaion of an award made by the Court of Claims amounts to a voluntary assumption of liability. On the contrary, I am impressed by the thought that a voluntary assumption of liability for the torts of its officers, agents or servants must be made by the enactment of an express statute.
After an experience of approximately five years on the Court of Claims I am more and more persuaded that every claim should be determined upon the basis of its own facts.
I think that the attempted award made in the instant case is abortive and futile. Under the Court Act two members of the court have the power to make or deny an award. In the case under consideration one member favors an award of $3500.00 and another would leave the determination of the amount of the award to the Legislature. Thus, majority members of the court are not in agreement on the question of the amount of the award which they would make in favor of claimant. An award like a judgment should be definite and certain. An award is, I think, the final consideration and determination of the court. When two members of the court who would favor an award are in disagreement as to the amount thereof, how can it be said that an award has been actually made? The majority opinion is vague, indefinite and uncertain as to what was actually done by the court in its determination of the case.
The Legislature has a special legislative report before it as to conditions at the medium security prison at Huttonsville. If the Legislature shall desire to correct conditions prevailing there it has all the information it may need in that report and I do not see that the Court of Claims is concerned about such condi- *197 dons. Its concern is to determine whether or not the public revenues of the state should be appropriated in satisfaction of the claim in question. It does not behoove the court to “penalize” the state in any amount.