

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KYLIE HANSON, individually, | ) | |
| | ) | No.  37419-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MIRIAM GONZALEZ CARMONA and | ) | |
| JOHN DOE CARMONA, husband and | ) | |
| wife, individually, and the marital | ) | |
| community comprised thereof, | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioners. | ) | |
| | ) | |
| SOUTHEAST WASHINGTON OFFICE | ) | |
| OF AGING AND LONG TERM CARE | ) | |
| ADVISORY COUNCIL, a Washington | ) | |
| non-profit corporation, | ) | |
| | ) | |
| Defendant. | ) | |

FEARING, J. — On discretionary review, we address a unique question: whether

RCW 4.96.010 and RCW 4.96.020(4), Washington's municipal corporation claims-filing

statutes, violate the separation of powers doctrine because of a conflict with CR 3(a).

Defendant Miriam Gonzalez Carmona, a government entity employee, allegedly caused a

car accident that resulted in injuries to plaintiff Kylie Hanson.  Hanson failed to file a

pre-suit notice under RCW 4.96.020(4) within the statute of limitations. Carmona moved

for summary judgment dismissal based on Hanson's omission of the statutory pre-suit

notice, which motion the trial court denied. We hold RCW 4.96.020(4) to be

constitutional in face of a separation of powers challenge. We also reject Hanson's

argument that a claimant need not file a pre-suit notice on the municipality when the

claimant sues the government employee in her individual capacity but when the

employee committed the tort during the course of employment. We reverse the trial

court's denial of summary judgment to Carmona.

FACTS

Kylie Hanson sues Miriam Gonzalez Carmona for an automobile accident. On

September 6, 2016, Carmona drove a vehicle that struck a car driven by Hanson in an

intersection in Spokane Valley. Carmona failed to obey a red traffic light and proceeded

into the intersection.

At the time of the collision, Miriam Gonzalez Carmona drove a car in the course

of her work with Southeast Washington Office of Aging and Long Term Care (SEW

ALTC), an agency on aging established pursuant to chapter 74.38 RCW. Eight

southeastern Washington counties created SEW ALTC through an interlocal agreement.

CP 17-18, CP 21. SEW ALTC is a local governmental entity. SEW ALTC owned the

Chevy Malibu driven by Carmona.

2

PROCEDURE

On August 26, 2019, Kylie Hanson filed suit against Miriam Gonzalez Carmona and an advisory council that oversees SEW ALTC. Kylie Hanson never filed a statutory notice of claim with Carmona's employer, SEW ALTC.

On October 7, 2019, Miriam Gonzalez Carmona and the advisory council brought a motion for summary judgment seeking dismissal of the suit with prejudice. The two defendants argued that Carmona's employer, SEW ALTC, is a local governmental entity. According to the defendants, Kylie Hanson needed to file a pre-suit tort claim with SEW ALTC under RCW 4.96.020 before commencement of a lawsuit against Carmona. The defendants also argued that the three-year statute of limitations had expired.

On October 28, 2019, Kylie Hanson filed an amended complaint that removed the advisory council as a defendant. She did not substitute SEW ALTC as a defendant. Miriam Gonzalez Carmona became the sole defendant. Hanson also removed in the amended complaint any allegation that Gonzalez Carmona operated the vehicle within the scope of her employment.

When responding to the summary judgment motion, Kylie Hanson did not contend that Miriam Gonzalez Carmona worked outside the scope of her employment with SEW ALTC at the time of the collision. Hanson argued, however, that Miriam Gonzalez Carmona remained personally liable for the accident regardless of her employer.

3

The trial court denied Miriam Gonzalez Carmona's summary judgment motion. The trial court ruled that the suit against Carmona individually could survive the lack of a pre-suit government claim. We granted discretionary review of the ruling.

LAW AND ANALYSIS

Miriam Gonzalez Carmona contends that she is a government entity employee and that Kylie Hanson needed to have filed a notice of claim under RCW 4.96.020(4) before commencing a lawsuit against her since she performed her acts within the scope of her employment. In response, Kylie Hanson argues six sometimes overlapping points. First, Carmona remains personally and privately liable for her tortious conduct regardless of the identity of her employer and regardless of whether she acted in the scope of her employment. Second, because SEW ALTC need not be joined in this lawsuit, Hanson need not supply Carmona or her employer a pre-suit tort claim. Third, any agreement by the government entity or its insurer to indemnify and provide a defense to Carmona does not convert this lawsuit into one against the government. Fourth, Carmona cannot rely on the government claims-filing statute because Hanson dismissed any quasi-governmental entity before the trial court issued its summary judgment denial. Fifth, CR 3(a) governs the commencement of a lawsuit, and RCW 4.96.020(4) impermissibly conflicts with the court rule. This argument asserts the separation of powers doctrine. Sixth, dismissal of her claim against Carmona for the failure to serve a pre-suit notice violates Hanson's fundamental property rights. The first four contentions rely primarily on common law,

and we conflate those four arguments for purposes of analysis. Hanson grounds the last

two arguments on constitutional principles, and we review those arguments together.

Statutory and Common Law

Two Washington statutes control our decision. First, RCW 4.96.010 declares:

> (1) All local governmental entities, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their past or present officers, employees, or volunteers while performing or in good faith purporting to perform their official duties, to the same extent as if they were a private person or corporation. *Filing a claim for damages within the time allowed by law shall be a condition precedent to the commencement of any action* claiming damages.

(Emphasis added.) In turn, RCW 4.96.020 reads, in part:

> (1) The provisions of this section apply to claims for damages against all local governmental entities and their officers, *employees*, or volunteers, acting in such capacity.
> (2) . . . All claims for damages against a local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, shall be presented to the agent within the applicable period of limitations within which an action must be commenced.
> . . . .
> (4) No action subject to the claim filing requirements of this section shall be commenced against any local governmental entity, or against any local governmental entity's officers, *employees*, or volunteers, acting in such capacity, for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim has first been presented to the agent of the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty calendar day period.

(Emphasis added.) Similar statutes apply to claims brought against the State of

5

Washington and the State's employees. The statutes are alternatively called nonclaim statutes, pre-suit notice statutes, and claims-filing statutes.

Washington courts have held that the claimant must file the statutory pre-suit claim with the local government or the State for torts committed by an employee during the scope of work for the government. *Wright v. Terrell*, 162 Wn.2d 192, 195, n.1, 170 P.3d 570 (2007); *Hyde v. University of Washington Medical Center*, 186 Wn. App. 926, 930, 347 P.3d 918 (2015); *Woods v. Bailet*, 116 Wn. App. 658, 665-66, 67 P.3d 511 (2003); *Hardesty v. Stenchever*, 82 Wn. App. 253, 261, 917 P.2d 577 (1996). The claim statute extends to suits arising from the conduct of a government employee even if the claimant only sues the employee. *Hyde v. University of Washington Medical Center*, 186 Wn. App. at 930-31 (2015).

The Washington Supreme Court, in *Bosteder v. City of Renton*, 155 Wn.2d 18, 117 P.3d 316 (2005), identified the purposes behind a government pre-suit notice statute. The government should be afforded an opportunity to investigate and remedy any potential claims prior to or in place of entrance of those claims into the judicial system. RCW 4.96.041 requires a local government to pay for the defense of its employee when the plaintiff sues the employee for acts committed within the scope of her employment. Thus, whether the plaintiff names the employee in the suit, the local government entity, or both, the action will implicate the local government's finances. In addition to RCW 4.96.041(2) demanding that the governmental entity provide a defense for an employee

6

sued for an act committed in good faith and in the scope of her employment, RCW

4.96.041(4) directs the government entity to pay any judgment against such employee.

To avoid application of RCW 4.96.020(4), Kylie Hanson forwards the Washington

Supreme Court's decision in *Eastwood v. Horse Harbor Foundation, Inc.*, 170 Wn.2d

380, 241 P.3d 1256 (2010) for the proposition that an employee may be held personally

liable for her tortious conduct regardless if she committed the tort in the course of

employment. In that case, the Supreme Court reviewed a Court of Appeals decision that

held the lessor of real property could not recover for economic loss caused by the lessee's

waste because the lessor's remedies were those limited to remedies listed in the lease.

The Court of Appeals also ruled that the lessee's employee could not be individually

liable for breach of contract. The Supreme Court reversed. The high court held that the

lessee held a tort duty to prevent waste independent of the parties' contract. In turn, the

lessor could also recover tort damages from the employee responsible for the waste. The

Supreme Court only wrote a modest paragraph when addressing the second issue. The

court followed the settled rule that an employee who tortiously causes injury to a third

person may be held personally liable to that person regardless of whether he or she

committed the tort while acting within the scope of employment.

We do not disagree with or breach the holding in *Eastwood v. Horse Harbor*

*Foundation*. The question of whether an employee may be personally liable for her

tortious conduct occurring during the course of employment is a distinct legal issue from

whether the claimant must file a pre-suit tort claim against a government employee before maintaining a court action.

Kylie Hanson posits the related argument that a plaintiff may sue either the employee or the employer for the employee's tortious conduct. She cites *Vanderpool v. Grange Insurance Association*, 110 Wn.2d 483, 487, 756 P.2d 111 (1988) and *Orwick v. Fox*, 65 Wn. App. 71, 80-81, 828 P.2d 12 (1992). In *Vanderpool v. Grange Insurance Association*, the Supreme Court held that release of the employer from liability for a tort does not release the employee. In *Orwick v. Fox*, this court held that the employer is not an indispensable party, under CR 19(b), for a suit against an employee for a tort committed during the course of employment.

We do not quarrel with the principles announced in *Vanderpool v. Grange Insurance Association* and *Orwick v. Fox*. Nevertheless, the rulings in the two cases do not address the question before this court: whether the claimant must file a pre-suit tort claim under RCW 4.96.020(4) when suing a government employee without adding the government employer as a defendant. *Hyde v. University of Washington Medical Center*, 186 Wn. App. 926, 930 (2015) answered that very question in the affirmative.

## Constitutional Law

Kylie Hanson's statutory and common law arguments may be more overture to her constitutional argument than aria. She contends that RCW 4.96.010 and RCW 4.96.020(4) are unconstitutional under the separation of powers doctrine. To set the

8

operatic stage for this constitutional attack, we first discuss sovereign immunity, the

legislature's waiver of the immunity, other constitutional challenges to nonclaim statutes,

and constitutional challenges under the separation of powers doctrine to other statutory

preconditions to filing suit.

WASH. CONST. art. II, § 26 declares:

> The legislature shall direct by law, in what manner, and in what
> courts, suits may be brought against the state.

Article II, section 26 of the constitution acknowledges the doctrine of sovereign

immunity recognized at common law. *Coulter v. State*, 93 Wn.2d 205, 207, 608 P.2d 261

(1980). Early case law, however, acknowledged that the legislature could waive the

State's sovereign immunity and render the State liable for designated causes of action.

*Riddoch v. State*, 68 Wash. 329, 332, 123 P. 450 (1912); *Billings v. State*, 27 Wash. 288,

291, 67 P. 583 (1902). Otherwise, the State avoids liability for the tortious conduct of its

officers, agents, or servants. *Riddoch v. State*, 68 Wash. at 332; *Billings v. State*, 27

Wash. at 293.

In RCW 4.96.010(1), the Washington State Legislature waived immunity for local

government entities. To repeat, the lengthy first sentence of subsection 1 of the statute

declares:

> All local governmental entities, whether acting in a governmental or
> proprietary capacity, shall be liable for damages arising out of their tortious
> conduct, or the tortious conduct of their past or present officers, employees,
> or volunteers while performing or in good faith purporting to perform their

9

official duties, to the same extent as if they were a private person or corporation.

Chapter 4.96 RCW originated as a result of the legislature's authority to conditionally waive sovereign immunity. *Myles v. Clark County*, 170 Wn. App. 521, 528, 289 P.3d 650 (2012).

Critically important to this appeal is the principle that, since the right to sue the state, a county, or other state-created governmental agency must be derived from statutory enactment, the legislature may establish the conditions which must be met before that right can be exercised. *Nelson v. Dunkin*, 69 Wn.2d 726, 729, 419 P.2d 984 (1966). RCW 4.96.010(1) imposed, as a condition to suing a local government, the filing of the pre-suit claim. The second sentence of the subsection reads in part:

> Filing a claim for damages within the time allowed by law shall be a condition precedent to the commencement of any action.

Claimants based previous constitutional challenges to Washington pre-suit notice statutes on the equal protection clause. The Washington Supreme Court held older versions of nonclaim statutes violative of the clause because they created two classes of tort victims with two classes of tortfeasors, governmental and nongovernmental, but then did not extend the statute of limitations during the waiting time resulting for pre-suit notices for claims against the government. *Petersen v. State*, 100 Wn.2d 421, 446, 671 P.2d 230 (1983); *Hall v. Niemer*, 97 Wn.2d 574, 579-80, 649 P.2d 98 (1982); *Jenkins v. State*, 85 Wn.2d 883, 890-91, 540 P.2d 1363 (1975); *Hunter v. North Mason High*

10

*School*, 85 Wn.2d 810, 813, 539 P.2d 845 (1975). Equal protection guarantees a party the same amount of time to bring a tort action against the government as he or she would have to bring an action against a private tortfeasor. *Daggs v. City of Seattle*, 110 Wn.2d 49, 53, 750 P.2d 626 (1988).

The Washington Supreme Court in *Hunter v. North Mason High School*, 85 Wn.2d 810 (1975), expressed criticisms that apply to all pre-suit notice statutes for claims against government units. A broad reading of the opinion would lead to declaring all nonclaim statutes unconstitutional. The high court observed that the defenders of the statutes argue that government entities are so large and are principal targets of tort claims such that their managing agents lack awareness of many potentially liability-producing incidents and therefore need special notice to adequately investigate and defend against them. The court answered this argument by noting that the discrimination behind the claims-filing statutes do not reflect the concern. Governmental bodies range in size from small municipal corporations to the state itself. As a class they are neither larger nor more liability-prone than the class of private tortfeasors, which includes everything from single individuals to giant corporations financially larger than the state. Most governmental subdivisions are small enough for their officials to learn of incidents which may subject them to liability. Government entities possess special investigative resources that better equip them to investigate and defend negligence suits than most private tortfeasors, for whom the law affords no special notice privileges. The privilege of

11

special notice given governmental bodies and the burden concomitantly placed on claimants does not correspond to any special need or inability to investigate particular to the bodies.

The *Hunter* court added that other purposes forwarded to justify nonclaim statutes also fail to connect to the distinction drawn between governmental tortfeasors and private tortfeasors. Special notice of possible future claims does little to facilitate budget planning, since most governmental entities are so small as to be unable to use actuarial methods to forecast liabilities and self-insure and will usually purchase insurance like any private individual or corporation. To the analysis of the *Hunter* court could be added the observation that many, if not most, municipalities summarily reject or ignore without consideration pre-suit notices.

In *Hunter v. North Mason High School*, the Washington Supreme Court concluded that, any policy of placing roadblocks in the way of potential claimants against government units having been abandoned, the court could not uphold nonclaim statutes simply because they serve to protect the public treasury. Claims-filing statutes serve no substantial or even rational basis. The arbitrary burden placed on state claimants by the pre-suit notice statutes could not withstand constitutional scrutiny.

The Washington Supreme Court soon rejected the equal protection analysis promoted in *Hunter v. North Mason High School* and distanced itself from the precedent created in the decision. Later Washington Supreme Court decisions courts sought to limit

12

*Hunter*'s holding to the particular claims-filing statute at issue in *Hunter* despite the rationale of the decision applying to all pre-suit notice statutes. In *Hunter*, the relevant version of RCW 4.96.020 demanded that the claimant give notice of any claim within one-hundred and twenty days of the injury, not outside of a minimum number of days before filing suit.

In *Daggs v. City of Seattle*, 110 Wn.2d 49 (1988), the Washington Supreme Court accepted at least one rationale behind claims-filing statutes that the *Hunter* court indirectly rejected. In *Daggs v. City of Seattle*, the court mentioned that claims filing laws serve the important function of fostering inexpensive settlement of tort claims. Within five years of *Hunter v. North Mason High School*, the Washington Supreme Court began upholding, against equal protection challenges, the requirement of pre-suit notices before filing an action against a government entity when the statute did not stunt the claimant's time for suing. *Medina v. Public Utility District No. 1 of Benton County*, 147 Wn.2d 303, 313-14, 53 P.3d 993 (2002); *Daggs v. City of Seattle*, 110 Wn.2d 49 (1988); *Hall v. Niemer*, 97 Wn.2d 574, 581 (1982); *Coulter v. State*, 93 Wn.2d 205, 207, 608 P.2d 261 (1980).

Kylie Hanson, in addition to contending that RCW 4.96.020(4) violates the separation of powers doctrine, maintains that the statute interferes with her fundamental right to compensation for tort injuries. Nevertheless, the Supreme Court has reasoned that a nonclaim statute does not impact a fundamental right or create a suspect

13

classification. *McDevitt v. Harborview Medical Center*, 179 Wn.2d 59, 316 P.3d 469

(2013); *Daggs v. City of Seattle*, 110 Wn.2d 49, 55-56 (1988). Therefore, the court

applies minimal scrutiny to pre-suit notice statutes and upholds the statute if its purpose

possesses a rational relationship with the language of the statute. Waiting a few months

to file suit does not substantially burden tort victims. *Daggs v. City of Seattle*, 110 Wn.2d

49, 56 (1988). The waiting period does not harm the victim when the statute provides for

a tolling of the statute of limitations during the period.

Kylie Hanson also argues that the legislature exceeded its authority when creating

procedures attendant to suing government entity employees, because, despite working for

the government, the employees remain private persons. Washington courts have rejected

challenges to nonclaim statutes based on an employee also being a private individual.

*Wright v. Terrell*, 162 Wn.2d 192, 195 n.1 (2007); *Hyde v. University of Washington

Medical Center*, 186 Wn. App. at 930-31 (2015); *Hardesty v. Stenchever*, 82 Wn. App. at

260-62 (1996). Hanson cites no law to support her contention that the legislature cannot

constitutionally benefit government employees, who remain private persons, with the

protection of a claims-filing statute.

In this appeal, Kylie Hanson astutely does not rely on the equal protection clause,

but asserts unconstitutionality on a ground not addressed before in a Washington

appellate decision in the context of government pre-suit notice statutes. Hanson

creatively contends that RCW 4.96.020(4) violates the separation of powers doctrine.

14

Also, the legislature exceeded its authority by enacting a procedural rule, which authority, under the separation of powers doctrine, only belongs to the Supreme Court. According to Hanson, the statute conflicts with CR 3(a) adopted by the Supreme Court. A plaintiff, in a reported decision, has not before argued that RCW 4.96.010 and RCW 4.96.020(4) conflict with CR 3(a) and thereby violate the separation of powers doctrine.

The Washington State Constitution does not contain a formal separation of powers clause, but the courts presume that the division of our government into different branches throughout our state's history calls for a vital separation of powers doctrine. *Brown v. Owen*, 165 Wn.2d 706, 718, 206 P.3d 310 (2009); *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994). The doctrine of separation of powers divides power into three coequal branches of government: executive, legislative, and judicial. *City of Fircrest v. Jensen*, 158 Wn.2d 384, 393-94, 143 P.3d 776 (2006) (plurality opinion). The doctrine does not demand that the branches of government be hermetically sealed off from one another, but ensures that the fundamental functions of each branch remain inviolate. *Hale v. Wellpinit School District No. 49*, 165 Wn.2d 494, 504, 198 P.3d 1021 (2009). If the activity of one branch threatens the independence or integrity or invades the prerogatives of another, that activity violates the separation of powers. *State v. Moreno*, 147 Wn.2d 500, 505-06, 58 P.3d 265 (2002).

Some fundamental functions lie within the inherent power of the judicial branch, including the power to promulgate rules for court practice. *Waples v. Yi*, 169 Wn.2d 152,

15

158, 234 P.3d 187 (2010). If a statute appears to conflict with a court rule, this court will first attempt to harmonize the two and give effect to both, but if they cannot be harmonized, the court rule will prevail in procedural matters, and the statute will prevail in substantive matters. *Waples v. Yi*, 169 Wn.2d 152, 158.

Kylie Hanson primarily relies on *Waples v. Yi*, 169 Wn.2d 152. In *Waples*, the Washington Supreme Court addressed a challenge to the constitutionality of former RCW 7.70.100(1) (2006), which required a plaintiff to provide health care providers with ninety days' notice of the plaintiff's intention to file a medical malpractice suit. In a lawsuit against her dentist, Nancy Waples conceded that she did not provide the required notice, but argued that the requirement is unconstitutional. The court agreed and declared the statute unconstitutional under the separation of powers doctrine.

The Washington Supreme Court, in *Waples v. Yi*, faced the question of whether former RCW 7.70.100(1) (2006) conflicts with the commencement provisions of CR 3(a) and whether that conflict involves procedural law or substantive law. Nancy Waples argued that former RCW 7.70.100(1) conflicted with the court rule because the notice requirement of the statute fundamentally changed the procedures for the commencement of a civil action under CR 3(a). CR 3(a) provides in pertinent part:

> Except as provided in rule 4.1, a civil action is *commenced* by service of a copy of a summons together with a copy of a complaint, as provided in rule 4 or by filing a complaint.

16

(Emphasis added.)  In contrast, the pertinent language of former RCW 7.70.100(1) then

provided:

> No action based upon a health care provider's professional negligence may be *commenced* unless the defendant has been given at least ninety days' notice of the intention to commence the action.

(Emphasis added.)  The Washington Supreme Court observed that requiring notice under

former RCW 7.70.100(1) added an additional step for commencing a suit to those

required by CR 3(a).  Failure to provide the notice required by former RCW 7.70.100(1)

resulted in a lawsuit's dismissal even when the complaint was properly filed and served

pursuant to CR 3(a).  The court could not harmonize the conflict between former RCW

7.70.100(1) and CR 3(a).  The court concluded that former RCW 7.70.100(1) involved

procedures, since procedural rules involve the operations of the courts.  Substantive law

creates, defines, and regulates primary rights.  RCW 7.70.100(1) did not address the

primary rights of either party and dealt only with the procedures to effectuate those

rights.  Therefore, CR 3(a) trumped former RCW 7.70.100(1).

When issuing *Waples v. Yi*, the Washington Supreme Court relied on its earlier

decision in *Putman v. Wenatchee Valley Medical Center, P.S.*, 166 Wn.2d 974, 216 P.3d

374 (2009).  In the latter case, the court applied the separation of powers doctrine to

declare RCW 7.70.150 unconstitutional because of its conflict with the pleading

requirements of CR 8 and 11.  RCW 7.70.150 demanded that, at the time a claimant filed

a suit against a health care provider, the plaintiff file a certificate of merit signed by a

health care provider that declared a reasonable probability existed that the defendant failed to exercise the standard of care. CR 11 states that attorneys need not verify pleadings in medical malpractice actions, let alone any lawsuits. CR 8 allows notice pleading. The conflict involved procedural law and not substantive law in that the certificate of merit requirement encroached upon the judiciary's power to set court rules.

In *Putman v. Wenatchee Valley Medical Center*, the court wrote that civil liberty consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. Therefore, the people have a right of access to courts. The right of access to courts includes the right of discovery authorized by the civil rules. Requiring medical malpractice plaintiffs to submit a certificate prior to discovery hindered their right of access to courts. Through the discovery process, plaintiffs uncover the evidence necessary to pursue their claims.

As with former RCW 7.70.100(1) (2006), RCW 4.96.020(4) also reads that the claimant must file a pre-suit notice before the action "shall be commenced." The nonclaim statute imposes an additional procedural obstacle on the claimant for the purpose of commencing action beyond the steps demanded by CR 3(a).

We observe a distinction between the circumstances in *Putnam v. Wenatchee Valley Medical Center* and *Waples v. Yi*. The tortfeasors in the two earlier decisions were private entities. The state constitution did not expressly grant the legislature authority over procedures in medical malpractice claims. The statute challenged by Kylie Hanson,

18

RCW 4.96.020(4), applies only in favor of government tortfeasors. The Washington Constitution expressly grants the state legislature the power to waive sovereign immunity, and, if it does, to impose conditions on suits against the state and municipal corporations. By adopting RCW 4.96.010 and .020(4), the legislature imposed one of several conditions on suing the government.

We deem *McDevitt v. Harborview Medical Center*, 179 Wn.2d 59, 316 P.3d 469 (2013) more on point than *Waples v. Yi* and *Putnam v. Wenatchee Valley Medical Clinic*. In *McDevitt*, the claimant challenged a former version of RCW 7.70.100(1), which statute required a ninety-day pre-suit notice before filing a medical malpractice suit. The Supreme Court had held the statute unconstitutional in *Waples v. Yi* as applied to private defendants. Glen McDevitt sued Harbor View Medical Center, a government entity operated by the University of Washington.

In *McDevitt v. Harborview Medical Center*, the Washington Supreme Court concluded that the ninety day pre-suit notice requirement is constitutional as applied against the State on the grounds that the legislature may establish conditions precedent, including pre-suit notice requirements. Thus the reasoning behind invalidating the statute in *Waples v. Yi* did not apply. The requirement did not constitute a substantial burden on the ability of governmental tort victims to obtain relief. The classification of plaintiffs suing state defendants did not infringe on a fundamental right or create a suspect classification. The requirement also rationally related to a legitimate government interest

19

because of the multitude of departments, agencies, officers and employees and their diverse and widespread activities, touching virtually every aspect of life within the state. The pre-suit notice also assisted government entities in budgeting. The statute promoted pre-suit settlement of valid claims.

We recognize that many, if not most, of the justices in *McDevitt v. Harborview Medical Center* concurred in the lead opinion because the lead opinion determined to apply its ruling prospectively only. Only three justices signed the lead opinion. Nevertheless, no later Washington Supreme Court has rejected the reasoning of *McDevitt*. We deem *McDevitt v. Harborview Medical Center* controlling in this appeal.

Failure to comply with the nonclaim statute's filing requirement leads to dismissal of the suit. *Daggs v. City of Seattle*, 110 Wn.2d 49, 57 (1988); *Hyde v. University of Washington Medical Center*, 186 Wn. App. 926, 929 (2015). The government need not show prejudice in order to gain dismissal. *Pirtle v. Spokane Public School District No. 81*, 83 Wn. App. 304, 309-10, 921 P.2d 1084 (1996).

Because *McDevitt v. Wenatchee Valley Medical Clinic* is a fractioned opinion, we welcome the Washington Supreme Court visiting the question of whether RCW 4.96.020(4) violates the separation of powers doctrine. In the meantime, we are bound to enforce the legislative will when exercised within its constitutional limits. *Robb v. City of Tacoma*, 175 Wash. 580, 586, 28 P.2d 327 (1933). We presume the constitutionality of a legislative act and will not declare an enactment void unless its invalidity appears

20

beyond a reasonable doubt. *Robb v. City of Tacoma*, 175 Wash. 580. We must give full effect to the plain language of a statute even when the results of doing so may seem unduly harsh. *Bosteder v. City of Renton*, 155 Wn.2d 18, 41 (2005).

## CONCLUSION

We reverse the superior court's denial of Miriam Gonzalez Carmona's motion for summary judgment. We remand to the superior court to enter judgment dismissing Kylie Hanson's suit against Carmona.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, C.J.

21